DECISION AND JUDGMENT ENTRY
This is an appeal from the judgment of the Pike County Court of Common Pleas, in which Defendant-Appellant Larry Edward Riley was convicted of involuntary manslaughter, a first-degree felony, in violation of R.C. 2903.04(A). The trial court sentenced appellant to nine-years imprisonment.
Appellant makes two arguments on appeal. First, he argues that the trial court erred in denying his motion to suppress because statements were taken from him following an invalid waiver of his Miranda rights. Second, he argues that the trial court violated the best-evidence rule by allowing the prosecution to supplement a faulty audio recording with eyewitness testimony of the same event.
We find appellant's arguments to be without merit and affirm the judgment of the trial court.
 I. The Proceedings Below
In November 1999, Investigator Maynard Thompson of the Pike County Prosecutor's Office and Deputy Daniel Ritchart of the Pike County Sheriff's Office conducted an interview of Defendant-Appellant Larry Edward Riley in connection with the stabbing death of appellant's supposed best fried, Keith West.
 A. The Waiver Form and Appellant's Statements
Before questioning appellant, Investigator Thompson and Deputy Ritchart presented appellant with a waiver form — a document consisting of two paragraphs, each with its own bolded heading: one entitled "Your Rights," the other, "Waiver."
Investigator Thompson first read aloud the Your Rights paragraph. This portion of the document detailed what are commonly referred to as Miranda rights — the right to remain silent and the right to legal counsel.
After reading this paragraph aloud, Investigator Thompson instructed appellant to review and read aloud the Waiver paragraph of the document. This paragraph read as follows:
 I have read the statement of my rights shown above. I understand what my rights are. I am willing to answer questions and make a statement. I do not want a lawyer. I understand and know what I am doing. No promises or threats have been made to me and no pressure of any kind has been used against me.
After appellant concluded reading this section aloud, Investigator Thompson asked him whether he understood his rights. Appellant stated that he did. Appellant then signed his name at the bottom of the form.
Subsequently, appellant proceeded to answer questions, explaining that he had been with West when he died. However, appellant maintained that he did not stab West, but, rather, that West had somehow inadvertently stabbed himself.
This interview was documented in its entirety — including the discussion of the waiver form — by way of an audio-cassette recorder.
 B.The Arraignment and the Suppression Hearing
In December 1999, appellant was arraigned and charged with Murder, a first-degree felony, in violation of R.C. 2903.02(A).
In March 2000, appellant filed a motion to suppress evidence. Appellant argued that the statements he made during the interview with Investigator Thompson and Deputy Ritchart should be suppressed because he did not make a voluntary waiver. The trial court scheduled a hearing on this motion.
At the hearing, the prosecution played the recording of appellant's interview. However, many of appellant's responses to the inquiries of Investigator Thompson and Deputy Ritchart were inaudible. For this reason, the court reporter was unable to transcribe a significant portion of the recording.
Accordingly, the prosecution called Investigator Thompson and Deputy Ritchart to testify as to what appellant's responses were.
At the conclusion of the hearing, the trial court denied appellant's motion.
 C.The Trial, Conviction, and Sentence
In May 2000, the matter proceeded to a jury trial. During the trial, the lower court again permitted Investigator Thompson and Deputy Ritchart to testify as to what appellant's inaudible responses were on the recording of the interview. This time, however, appellant objected, arguing that the practice violated the best-evidence rule. The trial court overruled appellant's objection.
Myriad other witnesses testified during the trial. These witnesses ranged from an expert who testified that West's knife wound was likely not self-inflicted, to a witness who testified that he was with appellant and West, and had heard West state that appellant had stabbed him.
At the conclusion of the trial, the jury returned a verdict of not guilty on the charge of murder. However, the jury found appellant guilty of the lesser offense of involuntary manslaughter, a first-degree felony, in violation of R.C. 2903.04(A).
In August 2000, the trial court sentenced appellant to nine-years imprisonment.
 II. The Appeal
Appellant timely filed an appeal with this Court, assigning the following errors for our review.
First Assignment of Error:
 THE COURT ERRED IN OVERRULING DEFENDANT'S MOTION TO SUPPRESS.
Second Assignment of Error:
 THE COURT ERRED IN PERMITTING PROSECUTION WITNESSES TO FILL IN UNINTELLIGIBLE OR INAUDIBLE PORTIONS OF THE RECORDING OF DEFENDANT'S STATEMENT.
We will address appellant's assignments of error seriatim.
 III. The Motion To Suppress
In Appellant's First Assignment of Error he argues that the trial court erred in denying his motion to suppress because statements were taken from him following an invalid waiver of his Miranda rights. We disagree.
 A. Appellate Review of Motions to Suppress
Appellate review of a trial court's ruling on a motion to suppress evidence is a "two-step inquiry." State v. Evans (July 13, 2001), Hamilton App. No. C-000565, unreported; accord State v. Moats (Mar. 6, 2001), Ross App. No. 99CA2524, unreported. First, the trial court's findings of fact are given deference and reviewed only for clear error. See Ornelas v. United States (1996), 517 U.S. 690, 116 S.Ct. 1657; Statev. Duncan (1998), 130 Ohio App.3d 77, 719 N.E.2d 608.
Second, "we engage in a de novo review, without deference to the trial court's conclusions, as to whether those properly supported facts meet the applicable legal standards." Evans, supra; accord Ornelas v.United States, 517 U.S. at 690, 116 S.Ct. at 1657; State v. Duncan,130 Ohio App.3d at 77, 719 N.E.2d at 608.
We will begin our analysis with a discussion of the applicable legal standards in this case; specifically, a discussion of Miranda rights and then the standard for waiving such rights. We will then apply these legal standards to the factual findings of the trial court.
 B.The Legal Standards
The Supreme Court of the United States, in the landmark decision ofMiranda v. Arizona (1966), 384 U.S. 436, 86 S.Ct. 1602, provided that theFifth Amendment to the United States Constitution required the use of procedural safeguards to protect the suspect from self-incrimination. Seeid.; see, generally, Note, Manipulated By Miranda: A Critical Analysis Of Bright Lines And Voluntary Confessions Under United States v. Dickerson
(2000), 68 U.Cin.L.Rev. 555; Note, It's Not a Cultural Thing: Disparate Domestic Enforcement of International Criminal Procedure Standards — A Comparison of the United States and Egypt (1996), 28 Case W.Res.J. Int'l L. 141, 156.
Thus, before interrogating a suspect, the police must inform the suspect of what today is interchangeably referred to as "Miranda
warnings" or "Miranda rights": the rights to remain silent and to legal counsel, either retained or court-appointed. See Miranda, supra.
The United States Supreme Court made it clear that, following the administration of Miranda warnings, statements that are the product of interrogation must be suppressed unless the accused explicitly waives hisMiranda rights and consents to the interrogation. See Miranda, supra; accord Katz, Ohio Arrest, Search and Seizure (2001) 429-430, Section 22.2.
It is well-settled that the prosecution must demonstrate, by the preponderance of evidence, a knowing, intelligent, and voluntary waiver ofMiranda rights based on the totality of the circumstances surrounding the interrogation. See State v. Edwards (1976), 49 Ohio St.2d 31,358 N.E.2d 1051; State v. Paladin (1988), 48 Ohio App.3d 16,548 N.E.2d 263. In the instant matter, appellant does not argue that theMiranda warnings were improperly administered or that appellant did not understand those rights. Rather, he argues only that his waiver was made involuntarily.
The United States Supreme Court explained that, in determining whether someone involuntarily waived his or her rights, the determinate factor is whether there was "coercive police activity." Colorado v. Connelly
(1986), 479 U.S. 157, 167, 107 S.Ct. 515, 522. The Supreme Court of Ohio restated this principle another way: "A suspect's decision to waive his privilege against self-incrimination is made voluntarily absent evidence that his will was overborne and his capacity for self-determination was critically impaired because of coercive police conduct." State v. Otte
(1996), 74 Ohio St.3d 555, 562, 660 N.E.2d 711, 719, certiorari denied (1996), 519 U.S. 836, 117 S.Ct. 109.
Clearly, this is not an easy standard to meet. In fact, the United States Supreme Court has emphasized recently how difficult it is to satisfy this inquiry.
The requirement that Miranda warnings be given does not, of course, dispense with the voluntariness inquiry. But as we said in [Berkemer v.McCarty (1984), 468 U.S. 420, 423, 104 S.Ct. 3138, 3141,] "cases in which a defendant can make a colorable argument that a self-incriminating statement was `compelled' despite the fact that the law enforcement authorities adhered to the dictates of Miranda are rare."
Dickerson v. United States (2000), 530 U.S. 428, 444, 120 S.Ct. 2326,2336; see, generally, Developments in the Law — Confessions (1966), 79 Harv.L.Rev. 935, 954-984 (detailing the difficulties, encountered by courts during the period preceding Miranda, in trying to distinguish voluntary from involuntary confessions).
In light of the foregoing analysis, we now turn to the trial court's factual findings.
 C.The Trial Court's Factual Findings
At the suppression hearing, Investigator Thompson and Deputy Ritchart testified that appellant was informed of his Miranda rights, that he stated that he understood them, and that he voluntarily signed the waiver form. Also, much of this dialogue was discernable from the audio recording of the interview, although certain parts of it were inaudible.
Appellant does not dispute the testimony that appellant was informed of and understood his rights. Rather, he argues that Investigator Thompson's instruction to appellant to read aloud the paragraph, entitled Waiver, of the waiver form "was not a voluntary act." Aside from the foregoing, appellant points to no other acts of compulsion.
Appellant's scantly supported argument comes nowhere near what is required to establish an involuntary waiver; we find nothing in the record indicating that appellant's "will was overborne and his capacity for self-determination was critically impaired because of coercive police conduct." State v. Otte, 74 Ohio St.3d at 562, 660 N.E.2d at 719; see,e.g., Moran v. Burbine (1986), 475 U.S. 412, 106 S.Ct. 1135 ("Once it is determined that a suspect's decision not to rely on his rights was uncoerced, * * *, the analysis is complete and the waiver is valid as a matter of law."); State v. Dailey (1990), 53 Ohio St.3d 88, 559 N.E.2d 459, paragraph two of the syllabus ("A suspect's decision to waive hisFifth Amendment privilege against compulsory self-incrimination is made voluntarily absent evidence that his will was overborne and his capacity for self-determination was critically impaired because of coercive police conduct.").
Instead, we find unchallenged evidence that appellant freely signed a written waiver of his Miranda rights after being fully advised of these rights. Further, appellant concedes that, not only was he advised of his rights, but that he understood his rights at the time of the waiver. While appellant may have been requested to read aloud a paragraph from a waiver form, we find no indication that he was forced to agree to it.
The purpose of excluding evidence seized in violation of the Constitution is to substantially deter future violations of the Constitution. * * * Only if we were to establish a brand new constitutional right — the right of a criminal defendant to confess to his crime only when totally rational and properly motivated — could [the] present claim be sustained. * * *. We have previously cautioned against expanding "currently applicable exclusionary rules by erecting additional barriers to placing truthful and probative evidence before state juries * * *." [Lego v. Twomey (1972), 404 U.S. 477, 488,92 S.Ct. 619, 627.] * * *. "[The] central purpose of a criminal trial is to decide the factual question of the defendant's guilt or innocence," [Delaware v. Van Arsdall, 475 U.S. 673, 681 (1986), 106 S.Ct. 1431,1433,] and while we have previously held that exclusion of evidence may be necessary to protect constitutional guarantees, both the necessity for the collateral inquiry and the exclusion of evidence deflect a criminal trial from its basic purpose. Colorado v. Connelly, 479 U.S. at 166,107 S.Ct. 521.
Moreover, we find nothing in the record to indicate that the trial court abused its discretion in accepting the testimony of Investigator Thompson and Deputy Ritchart. Under the totality-of-the-circumstances test set forth in State v. Edwards, 49 Ohio St.2d at 31,358 N.E.2d at 1051, we find that appellant's statements were admissible. See, e.g.,State v. Broom (1988), 40 Ohio St.3d 277, 533 N.E.2d 682, certiorari denied (1989), 490 U.S. 1075, 109 S.Ct. 2089 (holding that the credibility of witnesses who testify during a motion to suppress is a matter for the trier-of-fact and will not be disturbed by a reviewing court absent an abuse of discretion).
Therefore, we find that the trial court properly denied appellant's motion to suppress.
Appellant's First Assignment of Error is OVERRULED.
 IV. The Best-Evidence Rule
In Appellant's Second Assignment of Error he argues that the trial court erred in "permitting * * * witnesses to fill in unintelligible or inaudible portions of the recording of [appellant's] statement." Specifically, appellant argues that this practice violated Evid.R. 1002, commonly referred to as the "best-evidence rule." Again, we disagree.
The best-evidence rule provides that, in order to prove the contents of a recording, the original is required except as otherwise provided by rule or statute. See Evid.R. 1002.
Here, appellant argues that the testimony of Investigator Thompson and Deputy Ritchart should be inadmissable, despite them having witnessed appellant's waiver, because the faulty audio recording would have been a more accurate rendition of the events. This is wholly an erroneous application of the best-evidence rule.
It is well-settled that the best-evidence rule was intended to apply in those cases where the authenticity of a document is at issue; it was not intended to render an eyewitness' testimony secondary to or dependent upon a recorded version of those same events. See State v. Turvey (1992),84 Ohio App.3d 724, 618 N.E.2d 214 (holding that the best-evidence rule was not violated because a police officer's testimony was not secondary to the taped interview of the oral confession); State v. James (1974),41 Ohio App.2d 248, 250, 325 N.E.2d 267, 269 ("Where proof of a conversation has been of two different kinds, namely, a recording * * * and * * * witnesses who overheard it, * * * the courts have not relegated either to a secondary position, but have held that both types of evidence are equally competent primary evidence, and that one is not to be excluded because of the existence of the other."); accord FairfieldCommons Condo. Assn. v. Stasa (1985), 30 Ohio App.3d 11, 506 N.E.2d 237.
Recently, the Seventh District Court of Appeals rendered a decision involving a virtually identical argument as that made by appellant. InState v. Cechura (May 8, 2001), Columbiana App. No. 99CO74, unreported, the court held the following:
We conclude that although a tape is more likely to be free from error than a witness testifying from memory, when a person testifies from memory about a conversation they had with a defendant that just so happened to be recorded, they are not attempting to prove the contents of a recording * * *. Thus, the best evidence rule was not applicable when the officer initially began testifying as to his memory of what appellant stated to him during an interview. (Citations omitted.) Id.
Thus, the best-evidence rule is not applicable to either Investigator Thompson's or Deputy Ritchart's testimony of what they had observed and recollected from their interview with appellant.
Appellant's Second Assignment of Error is OVERRULED.
 V. Conclusion
For the foregoing reasons, we OVERRULE appellant's assignments of error and AFFIRM the judgment of the Pike County Court of Common Pleas.
 JUDGMENT ENTRY
It is ordered that the JUDGMENT BE AFFIRMED and that appellee recover of appellant costs herein taxed.
This Court finds that there were reasonable grounds for this appeal.
It is further ordered that a special mandate issue out of this Court directing the PIKE COUNTY COURT OF COMMON PLEAS to carry this judgment into execution.
IF A STAY OF EXECUTION OF SENTENCE AND RELEASE UPON BAIL HAS BEENPREVIOUSLY GRANTED BY THE TRIAL COURT OR THIS COURT, IT IS TEMPORARILYCONTINUED FOR A PERIOD NOT TO EXCEED SIXTY DAYS UPON THE BAIL PREVIOUSLYPOSTED. The purpose of the continued stay is to allow appellant to file with the Supreme Court of Ohio an application for stay during the pendency of proceedings in that court.
If a stay is continued by this entry, it will terminate at the earlier of the expiration of the sixty-day period, or the failure of appellant to file a notice of appeal with the Supreme Court of Ohio within the forty-five day appeal period pursuant to Rule II, Sec. 2 of the Rules of Practice of the Supreme Court of Ohio. Additionally, if the Supreme Court of Ohio dismisses the appeal prior to the expiration of the sixty days, the stay will terminate as of the date of such dismissal.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure. Exceptions.
Abele, P.J., and Kline, J.: Concur in Judgment Only.