DECISION AND JUDGMENT ENTRY
This is an appeal from the denial by the Athens County Municipal Court of Defendant-Appellant Floyd Woodrum's motion to suppress all evidence resulting from his arrest for driving while intoxicated.
Appellant makes three general arguments. First, he maintains that there was no "reasonable and articulable suspicion" to stop and detain appellant. Second, he asserts that the arresting officer arrested appellant outside the officer's jurisdiction. Third, he argues that the officer did not have probable cause to arrest appellant for driving while intoxicated.
We find appellant's arguments to be without merit and affirm the judgment of the trial court.
 I. STATEMENT OF THE CASE AND FACTS
In the early morning of July 3, 2000, Defendant-Appellant Floyd Woodrum was driving his automobile along U.S. 33, in Nelsonville, Ohio. After appellant exited the highway onto State Route 691, Officer Tom McKnight, of the Nelsonville Police Department, pulled appellant over because he had observed him driving outside his lane.
Immediately upon approaching appellant's vehicle, Officer McKnight observed what he thought were indicators of intoxication: appellant had bloodshot eyes and smelled of alcohol.
Accordingly, Officer McKnight ordered appellant out of his car to perform field-sobriety tests. Three standardized tests were administered: the walk-and-turn test, the one-leg-stand test, and the horizontal gaze nystagmus (HGN) test. Officer McKnight concluded that appellant had failed all three of these tests.
Based on the results of these tests, his observations of bloodshot eyes, the smell of alcohol, and appellant's general lack of coordination, Officer McKnight arrested appellant and charged him with operation of a motor vehicle while intoxicated (OMVI), a violation of R.C. 4511.19(A)(1). Appellant was also charged with driving with a suspended license, a violation of R.C. 4507.02(B), and failing to drive within marked lanes, a violation of R.C. 4511.33.
Later that same day, appellant filed with the Athens County Municipal Court a plea of not guilty as well as requests for a jury trial and discovery.
In August 2000, after having received discovery, appellant filed a motion to suppress evidence. Amid myriad irrelevant arguments — arguments contesting the administration of unperformed tests and challenging nonexistent statements — appellant presented the lower court with the following relevant arguments: that there was no lawful cause to stop appellant, no probable cause to arrest him, that the field-sobriety tests were improperly administered, and that Officer McKnight was not trained to perform such tests. Accordingly, appellant maintained, all evidence resulting from his arrest should have been suppressed.
In September 2000, a pre-trial evidentiary hearing was held regarding appellant's motion to suppress. The sole witness put on the stand was Officer McKnight.
Officer McKnight testified that he had pulled appellant over, in what he believed was within his geographical jurisdiction, because he was weaving and violating the marked-lanes statute. He further testified that appellant smelled of alcohol and had bloodshot eyes. Based on these observations, Officer McKnight ordered appellant out of the car to administer field-sobriety tests. He then testified as to precisely how he employed these tests.
Officer McKnight further testified that it was his opinion that appellant was intoxicated. Accordingly, he arrested appellant and charged him with OMVI.
Subsequently, the trial court issued an entry denying appellant's motion to suppress evidence. Shortly thereafter, appellant changed his plea to no contest.
Consequently, on September 26, 2000, in separate judgment entries, the lower court found appellant guilty of driving under the influence (DUI), a violation of Nelsonville City Code 733.01; amended the driving-under-suspension charge to, and convicted appellant of, driving without a license, a violation of Nelsonville City Code 735.01; and dismissed the marked-lanes charge.
For the DUI conviction, appellant was sentenced to one-hundred-eighty days in jail and fined $550; for the driving-without-a-license conviction, he was sentenced to one-hundred-eighty days in jail — which was to be served consecutively to the other jail term — and fined $100. Both jail terms, as well as a portion of the fines, were suspended, upon the condition that appellant comply with certain terms.
Only the DUI conviction is the subject of this appeal.
 II. MODIFICATION OF JUDGMENT ENTRY
Preliminarily, before we address the specifics of appellant's appeal, we must modify the September 26, 2000 judgment entry convicting appellant of DUI because appellant was never charged with this crime. Contrary to the briefs of both parties, Officer McKnight charged appellant with OMVInot DUI.
Accordingly, we hereby modify the trial court's September 26, 2000 judgment entry to reflect OMVI, a violation of R.C. 4511.19(A)(1), rather than DUI, a violation of Nelsonville City Code 733.01. See App.R. 12(B) (explaining that "where the court of appeals determines that the judgment or final order of the trial court should be modified as a matter of law it shall enter its judgment accordingly"); accord State v. Bricker (Apr. 20, 1993), Scioto App. No. 92CA2049, unreported, fn. 1.
Therefore, throughout the reminder of this opinion, we will refer to appellant's conviction as OMVI.
 III. ASSIGNMENTS OF ERROR
Appellant has timely filed with this Court an appeal from the trial court's order denying his motion to suppress. The following errors were assigned for our review.
I. THE TRIAL COURT COMMITTED REVERSIBLE ERROR WHEN IT OVERRULED APPELLANT'S TIMELY OBJECTIONS AS TO A LACK OF A PROPER FOUNDATION TO ALLOW THE OFFICER TO TESTIFY AS TO THE RESULTS OF THE HORIZONTAL GAZE NYSTAGMUS TEST.
II. THE TRIAL COURT COMMITTED REVERSIBLE ERROR IN OVERRULING APPELLANT'S OBJECTIONS TO TESTIMONY PERTAINING TO THE RESULTS OF THE HORIZONTAL GAZE NYSTAGMUS TEST, AS THE ARRESTING OFFICER FAILED TO ADMINISTER THE TEST IN STRICT COMPLIANCE WITH STANDARDS ADOPTED BY THE NATIONAL HIGHWAY TRAFFIC SAFETY ADMINISTRATION. (N.H.T.S.A.)
III. THE TRIAL COURT ERRED IN ADMITTING EVIDENCE OF THE RESULTS OF THE WALK-AND-TURN TEST, AS IT WAS NOT ADMINISTERED IN STRICT COMPLIANCE WITH N.H.S.T.A. STANDARDS.
IV. THE TRIAL COURT ERRED IN ADMITTING INTO EVIDENCE THE RESULTS OF THE ONE-LEG STAND [sic] TEST, AS IT WAS NOT CONDUCTED IN STRICT COMPLIANCE WITH N.H.T.S.A. STANDARDS.
V. THE TRIAL COURT COMMITTED REVERSIBLE ERROR IN OVERRULING APPELLANT'S MOTION TO SUPPRESS EVIDENCE GIVEN THE FACT ALL EVIDENCE WAS OBTAINED AS A RESULT OF AN EXTRA-TERRITORIAL ARREST AND NOT GOVERNED BY THE HOT-PURSUIT EXCEPTION.
VI. THE TRIAL COURT COMMITTED REVERSIBLE ERROR IN OVERRULING THE MOTION TO SUPPRESS EVIDENCE AS THE STATE FAILED TO PROVE THERE WAS REASONABLE AND ARTICULABLE SUSPICION TO STOP AND DETAIN APPELLANT.
Appellate review of a trial court's ruling on a motion to suppress evidence is a "two-step inquiry." State v. Evans (July 13, 2001), Hamilton App. No. C-000565, unreported; accord State v. Moats (Mar. 6, 2001), Ross App. No. 99CA2524, unreported. First, the trial court's findings of fact are given deference and reviewed only for clear error. See Ornelas v. United States (1996), 517 U.S. 690, 116 S.Ct. 1657; Statev. Duncan (1998), 130 Ohio App.3d 77, 719 N.E.2d 608.
Second, "we engage in a de novo review, without deference to the trial court's conclusions, as to whether those properly supported facts meet the applicable legal standards." Evans, supra; accord Ornelas v. UnitedStates, 517 U.S. at 690, 116 S.Ct. at 1657; State v. Duncan,130 Ohio App.3d at 77, 719 N.E.2d at 608.
We find that appellant's six assigned errors fall into one of three general arguments: (1) whether there was legal cause to stop and detain appellant; (2) whether the arresting officer was within his jurisdiction when he arrested appellant; and (3) whether there was legal cause to arrest appellant.[1] Accordingly, we will address appellant's assignments of error within this framework.
 A. The Sixth Assignment Of Error; There Was Legal Cause To Stop And Detain Appellant
The United States Supreme Court has clearly stated that automobile stops implicate the Fourth Amendment. See Adams v. Williams (1972),407 U.S. 143, 92 S.Ct. 1921; State v. Hart (1988), 61 Ohio App.3d 37,572 N.E.2d 141. Accordingly, any evidence obtained by way of an unconstitutional automobile stop must be suppressed as "fruit of the poisonous tree." See State v. Lozada (2001), 92 Ohio St.3d 74,748 N.E.2d 520.
 1. Two Tests: Investigative Stops And Non-Investigative Traffic-Offense Stops
There is more than one test for determining whether an automobile stop was constitutional. See Delaware v. Prouse (1979), 440 U.S. 648, 99 S.Ct. 13910. In the instant case, we must decide between the standards for investigative and non-investigative traffic-offense stops.
 a. Investigative Stops: Reasonable Suspicion Based Upon Specific and Articulable Facts
A police officer makes an investigative stop when "the officer does not necessarily witness a specific traffic violation, but the officer does have sufficient reason to believe that a criminal act has taken place or is occurring, and the officer seeks to confirm or refute this suspicion of criminal activity." State v. Moeller (Oct. 23, 2000), Butler App. No. CA99-07-128, unreported. The United States Supreme Court, in Terry v.Ohio (1968), 392 U.S. 1, 88 S.Ct. 1868, set forth the standard for investigative stops and detentions. The Terry Court held that a police officer with "reasonable suspicion" of criminal activity, based upon "specific and articulable facts," may stop a vehicle and detain its occupants briefly for purposes of limited questioning. Id. at 21,88 S.Ct. 1879; see State v. Williams (1994), 94 Ohio App.3d 538, 641
N.E.2d.
 b. Non-Investigative Traffic-Offense Stops: Probable Cause
In contrast, a police officer may also stop a vehicle after observing a traffic violation. When an officer witnesses a traffic violation and stops the vehicle to issue a citation, that stop must be "supported by probable cause, which arises when the stopping officer witnesses the traffic violation." Moeller, supra; see, e.g., Dayton v. Erickson
(1996), 76 Ohio St.3d 3, 665 N.E.2d 1091, syllabus ("[W]here a police officer stops a vehicle based upon probable cause that a traffic violation has occurred or was occurring, the stop is not unreasonable under the Fourth Amendment * * *."); see Whren v. United States (1996),517 U.S. 806, 116 S.Ct. 1769; Pennsylvania v. Mimms (1977), 434 U.S. 106,98 S.Ct. 330.
In the present case, Officer McKnight testified that he had pulled appellant over because he observed him driving outside his lane. Accordingly, the appropriate test to apply is that for non-investigative traffic-offense stops — that is, whether the stop was supported by probable cause. We note that both parties in this case have erroneously applied the Terry test for investigative stops. See Moeller, supra (The Moeller Court also dealt with "[t]he apparent confusion over what standard applies to a given traffic stop." Moeller explained, as we have done here, that "probable cause is the standard applicable to noninvestigatory traffic stops. Reasonable articulable suspicion justifies only an investigatory Terry stop, where the officer seeks to investigate suspected criminal activity.").
At the suppression hearing, Officer McKnight stated the following.
 [Appellant's] vehicle went right of the white fog line and came near the bridge as it was crossing the bridge * * * and then veered back to the left nearly crossing the yellow line, a sharp veer back to the left * * *. I proceeded to follow the vehicle and the vehicle went several more times across the white fog line * * *. The vehicle crossed the white-yellow line and did * * * slightly go off the berm, right side of the road, and back onto the roadway at that time.
We find this to be ample evidence to support Officer McKnight's probable-cause finding to stop appellant. See Dayton v. Erickson,76 Ohio St.3d at 3, 665 N.E.2d at 1091, at the syllabus (Stopping a vehicle based on probable cause that a traffic offense has occurred is not improper "even if the officer had some ulterior motive for making the stop, such as suspicion that the violator was engaging in more nefarious criminal activity."); State v. Gordon (Oct. 16, 2000), Preble App. No. CA99-12-022, unreported ("We have previously held that the failure to operate a vehicle within a marked lane provided a sufficient basis for a stop * * * Because probable cause existed that a traffic violation had occurred, the stop of appellant's vehicle did not violate the Fourth Amendment."); State v. Teter (Oct. 6, 2000), Ashtabula App. No. 99-A-0073, unreported ("[W]hen a police officer witnesses a motorist in transit commit a traffic violation, the officer has probable cause to stop the vehicle * * *. Upon stopping the vehicle, however, the officer may perceive facts indicating that the driver is intoxicated."); Statev. Brownlie (Mar. 31, 2000), Portage App. Nos. 99-P-0005 and 99-P-0006, unreported; State v. Cox (May 8, 2000), Warren App. No. CA99-08-089, unreported; State v. Schofield (Dec. 10, 1999), Portage App. No. 98-P-0099, unreported; State v. Yemma (Aug. 9, 1996), Portage App. No. 95-P-0156, unreported.
 2. An Officer Has Probable Cause To Stop For De Minimis Traffic Violations
Appellant cites to numerous cases, all of which appear to conclude, in varying degrees, that where a driver commits only a de minimis marked-lanes violation, some other evidence to suggest impairment is needed before an officer may stop the vehicle.
It is clearly the current status of the law that a de minimis violation of a traffic offense constitutes probable cause to stop a vehicle. SeeDayton v. Erickson, 76 Ohio St.3d at 3, 665 N.E.2d at 1091; State v.Wilhelm (1998), 81 Ohio St.3d 444, 692 N.E.2d 181; State v. McCormick
(Feb. 5, 2001), Stark App. No. 2000CA00204, unreported ("The severity of the violation is not the determining factor as to whether probable cause existed for the stop."); accord State v. Weimaster (Dec. 21, 1999), Richland App. No. 99CA36, unreported; State v. Kuno (Nov. 6, 1997), Franklin App. No. 97APC04-497, unreported (holding that the trial court erred in finding a driver's de minimis marked-lane violation was insufficient to justify stopping the vehicle); State v. Turner (Dec. 21, 2000), Franklin App. No. 00AP-248, unreported; United States v.Bloomfield (C.A.8, 1994), 40 F.3d 910, 915; United States v. Johnson
(C.A.3, 1995), 63 F.3d 242; United States v. Jeffus (C.A.4, 1994),22 F.3d 554; United States v. Roberson (C.A.5, 1993), 6 F.3d 1088.
In arriving at this conclusion, we found helpful the extremely well-reasoned analysis set forth by the Twelfth District Court of Appeals in State v. Moeller (Oct. 23, 2000), Butler App. No. CA99-07-128, unreported. See, also, State v. Mason (Nov. 27, 2000), Clinton App. No. CA99-11-033, unreported (following Moeller); State v. Romer (Oct. 30, 2000), Warren App. No. CA2000-04-039, unreported (also following Moeller).
In Moeller, the defendant was observed driving on, and slightly left of, the center line. Accordingly, the officer pulled the defendant over. After failing field-sobriety tests, the defendant was charged only with OMVI — he was not charged with a marked-lanes violation.
Subsequently, the defendant moved to suppress all of the evidence because, he argued, he was pulled over without legal cause. The trial court agreed, and suppressed the evidence.
On appeal, the appellate court reversed the lower court, finding that it had applied the incorrect test and misread controlling case law. In so doing, it reasoned as follows.
This court has found numerous opinions unclear as to what standard is appropriately applied to traffic stops, or more appropriately, to a police officer's initial act of pulling over a motorist * * *. Reasonable articulable suspicion justifies only an investigatory Terry stop, where the officer seeks to investigate suspected criminal activity * * *. It should be noted that the Supreme Court [in Dayton v. Erickson,76 Ohio St.3d at 3, 665 N.E.2d at 1091,] stated only that probable cause need be found, not that, upon investigation, it be confirmed that a traffic offense occurred * * *. In the instant case, Moeller asserts that he committed only de minimus traffic violations, which did not provide a reason to stop him, because no reasonable officer would have stopped a motorist for such violations. He cites State v. Johnson (1995),105 Ohio App.3d 37, 663 N.E.2d 675, in support of this proposition. However, Johnson is not the proper standard for resolving whether a traffic stop is proper. Erickson expressly rejected the subjective "would," or de minimus, test upon which Moeller relies * * *. In fact, soon after Erickson, the Supreme Court of Ohio reversed by conclusory language this court's judgment in [State v. Wilhelm (Apr. 14, 1997), Butler App. No. CA96-12-272, unreported, (1998), 81 Ohio St.3d 444,692 N.E.2d 181]. This court's opinion in Wilhelm relied upon Johnson and found that the defendant's traffic violations were de minimus and excusable. The Supreme Court's decisions in Erickson and Wilhelm have effectively overruled Johnson. That case is not the proper standard for judging the propriety of a traffic stop, and we now expressly overrule Johnson. In the instant case, Moeller admits, and the trial court found, that Moeller did cross over or drive upon the center or dividing lines on at least three roads * * *. Because [the officer] observed these traffic violations, he had probable cause to make a noninvestigatory traffic stop. Even if [the officer] ultimately concluded that Moeller's crossings of the center and dividing lines were excusable, that would not obviate the conclusion that [he] had probable cause to believe traffic violations had occurred. The trial court erred by concluding that [the officer's] traffic stop of Moeller was improper and granting the motion to suppress. (Emphasis added.) Moeller, supra.
3. State v. Brite And Similar Cases Are Erroneous: The Test For Non-Investigative Traffic-Offense Stops Is Probable Cause And Probable Cause Can Be Based On A De Minimis Offense.
Appellant, in his string of citations, cites to State v. Brite
(1997), 120 Ohio App.3d 517, 698 N.E.2d 478; a case in which our analysis was flawed. In Brite, this Court reasoned as follows.
The officer testified below that his sole reason for making the investigatory stop was that he had observed appellant's car drive over the right-hand edge line of the road on two * * * occasions during the span of a mile. It was unclear, however, just how far over the edge line appellant's car had gone. Moreover, [the officer] testified to the effect that appellant never went left of center, was not speeding and violated no other traffic laws. We find as a matter of law that these two instances of crossing the right had [sic] edge line of the road, without more, were insufficient to justify a stop of the vehicle. (Emphasis added.) Id. at 521, 698 N.E.2d 480.
We abandon this precedent for two reasons. First, Brite has — as have many cases in this area — applied the wrong standard. The stop described in Brite was based on the officer's observation of a marked-lanes violation — a non-investigative traffic-offense stop. Thus, the test should have been probable cause, not that set out in Terry for investigative stops. See Dayton v. Erickson, 76 Ohio St.3d at 3,665 N.E.2d at 1091, at the syllabus.
Second, as we have explained, a traffic violation is a traffic violation; "Any traffic violation, however minor, provides probable cause for a traffic stop." (Emphasis added.) United States v. Bloomfield,40 F.3d at 915.
We note that Judge Harsha wrote separately in Brite to apply the correct test and to point out that the court's opinion was wrong in requiring more than a de minimis violation for probable cause.
The implication of [Dayton v. Erickson, 76 Ohio St.3d at 3,665 N.E.2d at 1091, and Whren v. United States, 517 U.S. at 806, 116 S.Ct. at 1769] is that if a motorist is violating a traffic law, even in a minor aspect, i.e., traveling fifty-eight m.p.h. in a fifty-five m.p.h. zone, an officer is justified in making the stop. One could plausibly argue that even the slightest crossing of the white "fog line" on a highway results in a technical violation of R.C. 4511.33 * * *. Certainly, even a momentary "bobble" could give rise to a reasonable, articulable suspicion, if not probable cause, to believe R.C. 4511.33 has been violated in light of the holding and rationale in Erickson and Whren. (Emphasis added.) State v. Brite, 120 Ohio App.3d at 523,698 N.E.2d at 481 (Harsha, J., concurring). Judge Harsha was correct.
Recently, in State v. Vest (May 29, 2001), Ross App. No. 00CA2576, unreported, we attempted to move away from the faulty Brite analysis. Unfortunately, we failed to go far enough.
In Vest we attempted to distinguish Brite on its facts. We explained that the reason that Brite seemingly used the incorrect test was because there were not facts giving rise to probable cause that a traffic offense had occurred; thus, "In the absence of probable cause * * * [an] officer generally may not stop the vehicle unless the officer observes facts giving rise to a reasonable suspicion of criminal activity." Vest, supra. While that is an accurate statement of how the two tests might interrelate, we went on to say that "Our holding in Brite reflected this court's belief that isolated instances of weaving and/or marked lane violations that are not described with particularity do not provide factual basis for finding reasonable suspicion for drunk driving." Id.
The Fourth Amendment analysis in Brite, and those cases utilizing similar reasoning, is erroneous. In the face of a traffic violation, deminimis or otherwise, the test for examining the validity of a traffic stop is probable cause. See Erickson and Wilhelm, supra. If there is not a traffic violation, then the test for examining the validity of the stop is reasonable, articulable suspicion. See Moeller and Terry, supra.
 4. Application Of The Correct Law To The Case Sub Judice
Here, Officer McKnight clearly stated that he pulled appellant over because he had observed him driving outside his marked lane, in violation of R.C. 4511.33. Thus, our inquiry is complete: Officer McKnight had probable cause to stop appellant. It is simply superfluous whether the violation was merely de minimis, whether appellant was charged with such a violation, or, as in this case, whether that charge was subsequently dropped. See Moeller, supra; see, e.g., Gerstein v. Pugh (1975),420 U.S. 103, 111, 95 S.Ct. 854, 861, quoting Beck v. Ohio (1964),379 U.S. 89, 91, 85 S.Ct. 223, 225 (Probable cause is defined in terms of "facts or circumstances `sufficient to warrant a prudent man in believing that the [suspect] had committed or was committing an offense.'").
Moreover, we find appellant's argument disconcerting in light of the fact that, during the suppression hearing, appellant — by way of his counsel — clearly conceded that there was probable cause to stop appellant.
COURT: I * * * have a situation where [appellant] was driving off the roadway. That's a statutory violation in Ohio. He didn't just miss the fog line, he missed . . . he was out on the berm. That's against the law, that gives the officer probable cause to stop him * * *.
APPELLANT'S COUNSEL: I agree, Judge * * *.
Despite this dialogue, appellant persisted in arguing to this Court — again, in the context of the wrong standard — that there was not "a reasonable and articulable basis to stop [appellant] for a traffic infraction * * *."
Nowhere in his brief to this Court did appellant square this glaring inconsistency. Consequently, we find appellant's argument to be utterly without merit. See, generally, Grove v. Turman (Mar. 28, 1997), Athens App. No. 96CA1728, unreported (explaining that, "Attempting to mischaracterize the record * * * is disingenuous").
Appellant's Sixth Assignment of Error is OVERRULED.
 B. The Fifth Assignment of Error; Officer McKnight Testified that He Was Within His Jurisdiction
Appellant contends that "the alleged violation of going off the berm on the right side of the roadway was observed outside of the corporate limits of the City of Nelsonville. Weaving was observed inside the City. The marked lanes violation was not."
Here, Officer McKnight testified on direct-examination that "I believe [appellant] was inside the jurisdiction at the time that he went off the roadway." Later, on cross-examination, appellee's counsel asked whether it was possible that appellant had crossed the "fog line" outside of the city's limits. Officer McKnight responded that "it's possible, yes."
As we noted earlier, the trial court's findings of fact are given deference and reviewed only for clear error. See Ornelas v. UnitedStates, 517 U.S. at 690, 116 S.Ct. at 1657; State v. Duncan,130 Ohio App.3d at 77, 719 N.E.2d at 608. Here, it is clear that the trial court found Officer McKnight's testimony on direct-examination most convincing, and was not swayed by his equivocal response — "it's possible, yes" — on cross-examination.
It is a long-standing principle that factual findings of the trial court are to be given deference because it is in the best position "to view the witnesses and observe their demeanor, gestures and voice inflections, and use these observations in weighing the credibility of the proffered testimony." Seasons Coal Co. v. Cleveland (1984),10 Ohio St.3d 77, 80, 461 N.E.2d 1273, 1276. Accordingly, we are unwilling to disturb the trial court's capable assessment of Officer McKnight's testimony.
Appellant's Fifth Assignment of Error is OVERRULED.
 C. The First, Second, Third, And Fourth Assignments Of Error; Officer McKnight Had Probable Cause To Arrest Appellant For OMVI
Appellant's First, Second, Third, and Fourth Assignments of Error concern the field-sobriety tests. Of these four assignments of error, appellant essentially makes two arguments: first, he meticulously challenges the administration of each test; second, he argues that the proper foundation was not laid for the results of the HGN test to be admitted into evidence. We will address these arguments in turn.
Appellant was correct in citing State v. Homan (2000), 89 Ohio St.3d 421,732 N.E.2d 952, for the prospect that failure to strictly comply with standardized-testing procedures made the test results unreliable and, thus, they could not be used to constitute probable cause. However, appellant has failed to fully grasp the holding in Homan.
In Homan, the arresting officer — after stopping the defendant for a marked-lanes violation — saw that appellant had red, glassy eyes and that she smelled of alcohol. Accordingly, he administered the same three standardized tests here at issue: the walk-and-turn test, the one-leg-stand test, and the HGN test.
The defendant moved to suppress the test results because they had been administered improperly. The Supreme Court of Ohio held that the results of these tests should be suppressed because "[t]he small margins of error that characterize field sobriety tests make strict compliance critical." Id. at 425, 732 N.E.2d at 956.
However, the court went on to uphold the conviction on the following basis:
 We nevertheless agree with the court of appeals that the totality of facts and circumstances surrounding appellee's arrest supports a finding of probable cause. While field sobriety tests must be administered in strict compliance with standardized procedures, probable cause to arrest does not necessarily have to be based, in whole or in part, upon a suspect's poor performance on one or more of these tests. The totality of the facts and circumstances can support a finding of probable cause to arrest even where no field sobriety tests were administered or where, as here, the test results must be excluded for lack of strict compliance. Prior to stopping appellee's vehicle, [the arresting officer] observed erratic driving on the part of appellee. Upon stopping appellee's vehicle, he observed that appellee's eyes were "red and glassy" and that her breath smelled of alcohol. Appellee admitted to the arresting officer that she had been consuming alcoholic beverages. The totality of these facts and circumstances amply supports [the] decision to place appellee under arrest.
(Emphasis added.) Id. at 427, 732 N.E.2d at 957; See Mason v. Murphy
(1997), 123 Ohio App.3d 592, 704 N.E.2d 1260; State v. Beall (Mar. 8, 1999), Belmont App. No. 94-B-43, unreported.
In the present case, Officer McKnight testified that he arrested appellant based on the results of these tests and his observations of bloodshot eyes, the smell of alcohol, and appellant's general lack of coordination.
Thus, while Homan might certainly require the results of the tests in this case to be suppressed, it further provides — and appellant appears to have overlooked this portion of the case — that an OMVI conviction may stand if the totality of the circumstances surrounding the arrest support a finding of probable cause. Indeed, in the case subjudice, we find that Officer McKnight's probable-cause finding is supported by the totality of the circumstances surrounding appellant's arrest.
Appellant also argues that the results of the HGN test should be suppressed because "before the results of the * * * test may be received into evidence * * * the State must establish the officer possessed the requisite education, training, and experience to conduct this test."
In light of our foregoing discussion, we find this argument to be moot. See South Pacific Terminal Co. v. Interstate Commerce Comm. (1910), 219 U.S. 498, 514, 31 S.Ct. 279, 283 ("It is not the duty of a court to decide purely academic or abstract questions.").
Appellant's First, Second, Third, and Fourth Assignments of Error are OVERRULED.
 IV. CONCLUSION
For the foregoing reasons, we OVERRULE appellant's assignments of errorin toto and AFFIRM the judgment of the Athens County Municipal Court.
Harsha, J., concurring in judgment only:
I agree with the principal opinion's conclusion that probable cause is the appropriate legal standard to apply here, and that it did, in fact, exist. However, I concur in judgment only for several reasons.
First, I believe the appellant's first, second, third and fourth assignments of error are meritorious. Thus, I would sustain them. I would only reject the sixth assignment of error.
Second, I do not join the principal opinion's characterization of the appellant's candor.
Third, I continue to believe that de minimis weaving and/or crossing of the marked lanes does not always justify a traffic stop based upon either the Terry standard or probable cause. I do so in light of the "as nearly as practicable" language of R.C. 4511.33(A). In other words, I construe that language to be the legislature's recognition that every de minimis crossing of marked lanes is not a traffic violation.
[1] We note that appellee appears to have either submitted an incomplete brief or overlooked appellant's Fifth and Sixth Assignments of Error. Appellee states in its brief to this Court that "[t]he fourarguments presented by * * * appellant are of the same general nature and will be discussed together. It is the position of [appellee] that sufficient probable cause existed for the appellant to be arrested forOMVI." (Emphasis added.).
Appellant has presented this Court with six assignments of error, not four. And, as we have explained, there are two clear arguments in addition to the one that appellee has identified.
While we could require appellee to resubmit its brief to conform to App.R. 16, or even accept appellant's presentation of the facts and issues — as they relate to these assignments of error — as correct, in the interest of justice, we have declined to do so. See App.R. 16;State v. Gall (1980), 65 Ohio App.2d 57, 415 N.E.2d 1008; see, generally, In re Wright (1993), 88 Ohio App.3d 539, 624 N.E.2d 347.