The STATE of Ohio, Appellee,

v.

DUNCAN, Appellant.

[Cite as *State v. Duncan* (1998), 130 Ohio App.3d 77.]

Court of Appeals of Ohio,
First District, Hamilton County.

Nos. C–970482 and C–970483.

Decided Sept. 25, 1998.

*Joseph T. Deters,* Hamilton County Prosecuting Attorney, and *Susan Laker Tolbert,* Assistant Prosecuting Attorney, for appellee.

*Geoffrey P. Damon,* for appellant.

---

*Per Curiam.*

In these consolidated appeals, defendant-appellant, Kenya Duncan, challenges her conviction, following a trial to a jury, on one count of engaging in a pattern of corrupt activity, in violation of R.C. 2923.32, the Ohio RICO (Racketeer Influenced and Corrupt Organizations) statute, and on five counts of money laundering, in violation of R.C. 1315.55(A), which also served as the predicate crimes for the RICO count. She also challenges the trial court's denial of her motion for a new trial. Raising ten assignments of error, Duncan challenges (1) the admissibility of evidence gained from trash removed from her hotel room, (2) the admission of statements she made to police, (3) the weight and the sufficiency of the evidence, (4) prosecutorial misconduct, (5) the trial court's failure to grant several motions to dismiss, (6) the trial court's denial of her motion for judgment of acquittal at the conclusion of the state's case, (7) the denial of her motion for mistrial based upon improper admission of evidence, (8) the giving of erroneous, improper and substantially prejudicial jury instructions, (9) the denial of her motion for a new trial due to jury misconduct, and (10) the admission of similar-acts evidence by co-defendants. The assignments of error are without merit.

## Facts

In September 1996, employees of the Howard Johnson's hotel located near Interstate 71 contacted agents of the Hamilton County narcotics unit ("RENU"). They reported suspicious activities of a group of five men and women. The group arrived in a van bearing Florida license plates, late in the night, without reservations. They paid for adjoining rooms with cash and registered in the name of one of the group who gave a Miami, Florida address. They made numerous long-distance telephone calls. Duncan was a member of this group.

RENU agents observed the group drive to a nearby pharmacy. The pharmacy had a Western Union money-transfer station from which a patron could send or receive money by wire transmission. If amounts over $3,000 were sent, identification of the sender had to be provided. The pharmacy clerk testified that several members of the group had patronized the Western Union service on three or four occasions, employing a unique folding of the cash used to pay for the money transfer.

On October 1, 1996, Duncan entered the pharmacy and prepared to send $2,800 to an addressee in Miami. On the form, Duncan identified herself as Sandra Cliphant. The clerk noticed that Duncan wore a necklace with the name Debbie on it. Duncan purchased the transfer with money folded in the same manner used by Carnell Morgan, another member of Duncan's group. Duncan left the pharmacy.

The group proceeded to a second pharmacy nearby with a Western Union service. There Duncan filled out a transfer form, identifying herself as Sandra Kerr and sent $2,500 in cash to Lataya Kerr in Miami.

While a RENU agent questioned the first pharmacy clerk, Duncan reentered the pharmacy. She explained that she had made a mistake in filling out the Western Union transfer form and that her last name was really Oliphant, not Cliphant. Both the agent and the clerk identified Duncan as the woman claiming to be Sandra Cliphant/Oliphant.

On October 2, 1996, RENU agents followed Duncan and three of her group to a check-cashing store. Before one of the group could complete an additional transfer, they were arrested. Three packets of bills, totalling $1,000 each, were confiscated.

Duncan was questioned by Officer Gramke and admitted making the Western Union transfers. She claimed, initially, that she made the transfers for one member of the group, but then declared that she gave a false name because she thought that the transfers might be illegal.

While awaiting trial, Duncan made statements to a cellmate, Vicky Alexander. Alexander testified that Duncan told her that the group brought marijuana and

cocaine into the country through New York. They hid the drugs in honey jars. In the last month of their operation, they sold $50,000 in illegal drugs in North Carolina. The group came to Cincinnati to dispose of the money gained in the drug sales.

At the conclusion of the state's case-in-chief, Duncan rested without presenting any evidence. The jury returned verdicts of guilty, Duncan was sentenced as appears of record, and these appeals followed.

## Assignments of Error

█ In her first assignment of error, Duncan contends that the trial court erred by denying her motion to suppress the physical evidence found in trash bags removed from her hotel room. While no contraband was located in the trash, evidence of financial tabulations reflecting some of the Western Union transfers sent to Miami, Florida addressees was found. This physical evidence constituted a small part of the factual predicate for a search warrant for the rooms requested by RENU officers.

While the trial court did not find that Duncan had no reasonable expectation of privacy in the discarded contents of the garbage bag, see *State v. Brown* (1984), 20 Ohio App.3d 36, 37, 20 OBR 38, 39–40, 484 N.E.2d 215, 217, it did make the factual finding that "the housekeepers did not act as government agents." From this historical fact, the court concluded that no Fourth Amendment violation had occurred that required suppression of the evidence.

█ Review of the trial court's detailed findings of fact and legal conclusions entails a two-step inquiry. First, this court must review the trial court's findings of historical fact only for clear error, "giv[ing] due weight to inferences drawn from those facts" by the trial court. *Ornelas v. United States* (1996), 517 U.S. 690, 699, 116 S.Ct. 1657, 1663, 134 L.Ed.2d 911, 920; *State v. Mills* (1992), 62 Ohio St.3d 357, 366, 582 N.E.2d 972; *State v. DeHass* (1967), 10 Ohio St.2d 230, 39 O.O.2d 366, 227 N.E.2d 212, paragraph one of the syllabus. Next, accepting those facts as true, we must independently determine, as a matter of law, without deference to the trial court's conclusions, whether they meet the applicable legal standard. See *Ornelas*, 517 U.S. at 698–700, 116 S.Ct. at 1663, 134 L.Ed.2d at 920–921.

Here, the trial court's findings of fact are not clearly erroneous where the testimony reveals that the housekeepers retrieved the bags as they ordinarily would, without instruction from the RENU agents, and simply turned the bags over to the agents, with the permission of the on-duty manager. The trial court then correctly concluded that since the Fourth Amendment prohibits only those unreasonable searches involving state action, the evidence in this case was not seized in violation of Duncan's rights, as the seizure was not made at the behest

of or with the participation of any state official. Thus, the evidence was admissible in the state's case-in-chief. *Burdeau v. McDowell* (1921), 256 U.S. 465, 41 S.Ct. 574, 65 L.Ed. 1048; *Ornelas, supra.* The first assignment of error is overruled.

Duncan's second assignment of error, in which she claims the trial court erred by denying her motion to suppress statements she made to Officer Gramke following her arrest because the *Miranda*-rights waiver form was dated October 1, and the officer's summary of the interview was dated October 2, is overruled. The officer's unrebutted testimony was that Duncan was fully apprised of her rights before questioning. From these historical facts, the trial court correctly concluded that the statements were admissible in the state's case-in-chief. *Colorado v. Connelly* (1986), 479 U.S. 157, 107 S.Ct. 515, 93 L.Ed.2d 473; *Ornelas, supra.* The weight to be given the officer's in-court account of Duncan's statements was for the trier of fact to determine. *State v. DeHass,* paragraph one of the syllabus.

In two interrelated assignments of error, Duncan challenges the weight and the sufficiency of the evidence adduced to support her convictions, and the denial of her Crim.R. 29 motion for judgment of acquittal made at the close of the state's case.

Duncan was indicted for and convicted of, *inter alia,* violating the Ohio RICO statute, R.C. 2923.32(A)(1), which provides:

"No person employed by, or associated with, any enterprise shall conduct or participate in, directly or indirectly, the affairs of the enterprise through a pattern of corrupt activity or the collection of an unlawful debt."

An "enterprise" is defined as including "any individual, * * * or other legal entity, or any organization, association, or group of persons associated in fact although not a legal entity. 'Enterprise' includes illicit as well as licit enterprises." R.C. 2923.31(C).

A pattern of corrupt activity is "two or more incidents of corrupt activity * * * that are related to the affairs of the same enterprise, are not isolated, and are not so closely related to each other and connected in time and place that they constitute a single event." R.C. 2923.31(E); *State v. Woods* (Sept. 5, 1997), Hamilton App. No. C–950954, unreported, 1997 WL 602963. Money laundering, in violation of R.C. 1315.55, is a "corrupt activity." R.C. 2923.31(I)(2)(a).

Duncan was also indicted and convicted for violating R.C. 1315.55(A), proscribing money laundering:

"(1) No person shall conduct or attempt to conduct a transaction knowing that the property involved in the transaction is the proceeds of some form of unlawful

activity with the purpose of committing or furthering the commission of corrupt activity.

"(2) No person shall conduct or attempt to conduct a transaction knowing that the property involved in the transaction is the proceeds of some form of unlawful activity with the intent to conceal or disguise the nature, location, source, ownership, or control of the property or the intent to avoid a transaction reporting requirement under section 1315.53 of the Revised Code or federal law.

"(3) No person shall conduct or attempt to conduct a transaction with the purpose to promote, manage, establish, carry on, or facilitate the promotion, management, establishment, or carrying on of corrupt activity."

Our review of the record fails to persuade us that the jury, sitting as the trier of fact, clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. *Tibbs v. Florida* (1982), 457 U.S. 31, 102 S.Ct. 2211, 72 L.Ed.2d 652; *State v. Thompkins* (1997), 78 Ohio St.3d 380, 387, 678 N.E.2d 541, 546–547. The jury was entitled to reject Duncan's defense that there was not adequate evidence adduced to establish that she was involved in corrupt activity—the basis of the RICO charge. The state presented eyewitness testimony that Duncan made several Western Union transactions transferring money derived from illegal drug sales. Duncan made statements to Vicky Anderson and to Officer Gramke that she was involved in a group that she knew to be engaged in an illegal enterprise selling drugs.

█ While Duncan highlighted deficiencies in the testimony of the witnesses, the weight to be given the evidence and the credibility of the witnesses was primarily for the trier of fact to determine. *State v. DeHass*, 10 Ohio St.2d 230, 39 O.O.2d 366, 227 N.E.2d 212, paragraph one of the syllabus.

Moreover, the record reflects substantial, credible evidence from which the court could have reasonably concluded that all elements of the charged crimes were proven beyond a reasonable doubt. *State v. Waddy* (1991), 63 Ohio St.3d 424, 588 N.E.2d 819. The third assignment of error is overruled.

█ Duncan also argues that the trial court erred in denying her Crim.R. 29 motion for judgment of acquittal made at the close of the state's case. In its consideration of a Crim.R. 29 motion, the court must construe all evidence in a light most favorable to the state. *State v. Evans* (1992), 63 Ohio St.3d 231, 248, 586 N.E.2d 1042, 1056. A trial court may not order acquittal "if the evidence is such that reasonable minds can reach different conclusions as to whether each material element of a crime has been proved beyond a reasonable doubt." *State v. Bridgeman* (1978), 55 Ohio St.2d 261, 9 O.O.3d 401, 381 N.E.2d 184, syllabus.

The evidence presented by the prosecution was such that reasonable minds could have concluded that Duncan engaged in a pattern of corrupt activity by violating the money-laundering statutes. Duncan was a member of a group that imported and sold illegal drugs. In September 1996, the group had gained $50,000 from the sale of illegal drugs. They stopped in Cincinnati to employ Western Union money transfers to deliver the money to Miami, Florida, so as to conceal the criminal origins of the funds. Duncan herself conducted at least two of the Western Union transmissions by employing a fictitious name.

Viewing the evidence in a light most favorable to the state, the trial court did not err in denying Duncan's motion for judgment of acquittal. Reasonable minds could have differed as to whether all the elements of the RICO and money-laundering offenses were proven, thus precluding an entry of judgment of acquittal. *State v. Bridgeman.* Therefore, the sixth assignment of error is overruled.

■ Duncan next claims that she was denied her constitutional right to a fair trial by a course of prosecutorial misconduct. She claims that the prosecutor repeatedly alleged, in argument and in questions posed to witnesses, and over her strenuous objections, that Duncan was engaged in drug trafficking despite the absence of an indictment for drug offenses and the absence of the seizure of any drugs from her.

■ The test for whether prosecutorial misconduct requires reversal is whether remarks were improper and, if so, whether they prejudicially affected the substantial rights of the accused. *State v. Lott* (1990), 51 Ohio St.3d 160, 555 N.E.2d 293.

■ The prosecutor's references to and questioning about drug trafficking were not erroneous because they provided the jury with the full background of the money-laundering and RICO offenses. Background information is admissible to give the jury the setting of the case. *State v. Wilkinson* (1980), 64 Ohio St.2d 308, 317, 18 O.O.3d 482, 488, 415 N.E.2d 261, 269, citing *United States v. Roberts* (C.A.6, 1977), 548 F.2d 665, 667; *State v. White* (June 25, 1997), Hamilton App. No. C–960506, unreported, 1997 WL 346141; see, also, *State v. Roe* (1989), 41 Ohio St.3d 18, 535 N.E.2d 1351. Generally, the jury is entitled to know the setting of a case because it cannot be expected to make its decision in a void, without knowledge of the circumstances of the acts that form the basis of the crimes charged. *State v. Wilkinson.*

In this case, in particular, the state was required to prove beyond a reasonable doubt that Duncan was engaged in corrupt activity. R.C. 2923.32(A). As the jury was instructed, illegal drug trafficking and money laundering are both corrupt activities. R.C. 2923.31(I).

As the prosecutor's argument and questioning were not improper, given their relevance both to Duncan's motivation for making the Western Union transactions and to the background of the charged offenses, Duncan's fourth assignment of error is overruled.

In a related assignment of error, Duncan claims that the trial court erred by not granting her oral motion for a mistrial, made during the testimony of a law enforcement officer concerning a "96 Move," a technique employed by drug traffickers in which a car battery is hollowed out and used to transport illegal narcotics.

The state was attempting to elicit evidence of the condition of the battery removed from the van used by Duncan and her group. The trial court denied Duncan's motion, stating that there was considerable evidence of corrupt activity including questionable wire transfers and "of some involvement of one of the parties involved here with some people involved with drugs." Because the trial court expressed some sound reasoning process in denying the motion and did not act arbitrarily, unreasonably or unconscionably, this court will not reverse its decision. *State v. Widner* (1981), 68 Ohio St.2d 188, 22 O.O.3d 430, 429 N.E.2d 1065; *AAAA Ent., Inc. v. River Place Community Urban Redevelopment Corp.* (1990), 50 Ohio St.3d 157, 161, 553 N.E.2d 597, 601; *State v. Chitwood* (1992), 83 Ohio App.3d 443, 448, 615 N.E.2d 257, 260. The seventh assignment of error is overruled.

In Duncan's tenth assignment of error, she similarly alleges that the trial court committed plain error by allowing prejudicial "similar-acts evidence by co-defendants in as evidence against defendant."

We note as an initial matter that Duncan was tried without codefendants, although the other members of her criminal enterprise were indicted together and some of their pretrial motions were argued jointly. Duncan was indicted for money laundering and for engaging in a pattern of corrupt activity with others in violation of the Ohio RICO statute. The evidence of the actions of others, complained of in this assignment of error, was necessary to prove the state's case and to explain the immediate context of the offenses charged. As the admission of this evidence was not error and certainly did not rise to the level of plain error, the tenth assignment of error is overruled. Crim.R. 52; Evid.R. 103; *State v. Wilkinson; State v. White.*

In her fifth assignment of error, Duncan contends that her conviction should be vacated due to the unconstitutionally vague nature of the money-laundering statute, R.C. 1315.55. Specifically, she argues that the statute, because of its expansive definition of key terms such as "transaction," fails to give adequate notice of the activities one must engage in to violate the statute.

Duncan raised this issue in a facial attack on the constitutionality of the statute in the trial court. In a well-reasoned decision, the trial court denied her motion to dismiss in part.

As this court has noted:

"Under the vagueness doctrine, which is premised on the Fourteenth Amendment due-process requirement that a 'law give fair notice of offending conduct,' a statute is void for vagueness if it ' "fails to give a person of ordinary intelligence fair notice that his contemplated conduct is forbidden by the statute" * * * [or if] it encourages arbitrary and erratic arrests and convictions.' *Papachristou v. Jacksonville* (1972), 405 U.S. 156, 162, 92 S.Ct. 839, 843, 31 L.Ed.2d 110, 115–116, (quoting *United States v. Harriss* [1954], 347 U.S. 612, 617, 74 S.Ct. 808, 812, 98 L.Ed. 989, 996)." *Cincinnati v. Thompson* (1994), 96 Ohio App.3d 7, 24, 643 N.E.2d 1157, 1169.

There are two types of vagueness challenges. In First Amendment cases, a statute is subject to invalidation for facial vagueness if it reaches a "substantial amount" of protected conduct. See *Kolender v. Lawson* (1983), 461 U.S. 352, 359, 103 S.Ct. 1855, 1859, 75 L.Ed.2d 903, 910, fn. 8. If the statute does not sufficiently impinge upon First Amendment rights, however, it must be judged as applied to the particular defendant. In other words, the court need not examine hypothetical applications of the law but, rather, need only consider whether the defendant's conduct was clearly proscribed. If so, the defendant cannot complain of the vagueness of the law as applied to others. *Thompson,* 96 Ohio App.3d at 24, 643 N.E.2d at 1169; see, also, *State v. Woods* (holding the Ohio RICO statute not void for vagueness).

Legislative enactments are presumed constitutional and are to be construed in conformity with the Ohio and federal Constitutions if at all possible. A court is under a duty to give a statute, whenever possible, a reasonable construction that would render it constitutionally definite. *State v. Dorso* (1983), 4 Ohio St.3d 60, 61, 4 OBR 150, 150–151, 446 N.E.2d 449, 450. Mere imprecision does not make a statute void for vagueness. *Id.,* citing *Roth v. United States* (1957), 354 U.S. 476, 491, 77 S.Ct. 1304, 1312, 1 L.Ed.2d 1498, 1510–1511. Finally, the unconstitutional nature of a statute must be demonstrated beyond a reasonable doubt by the party challenging it. *Id.*

With respect to a criminal statute, the general rule is that "[o]ne to whose conduct a statute clearly applies may not successfully challenge it for vagueness," *Parker v. Levy* (1974), 417 U.S. 733, 756, 94 S.Ct. 2547, 2562, 41 L.Ed.2d 439, 458, and its corollary is that a statute is not unconstitutionally vague on its face unless it is "impermissibly vague in all of its applications." *Hoffman*

*Estates v. The Flipside, Hoffman Estates, Inc.* (1982), 455 U.S. 489, 497, 102 S.Ct. 1186, 1193, 71 L.Ed.2d 362, 371.

According to Duncan, the money-laundering statute is infirm because of its vague definition of terms, including "transaction." To support her conviction for money laundering, the jury must have concluded, *inter alia*, that Duncan conducted or attempted to conduct a "transaction." The term appears in R.C. 1315.51 as follows:

"(L) 'Transaction' includes a purchase, sale, trade, loan, pledge, investment, gift, transfer, transmission, delivery, deposit, withdrawal, payment, transfer between accounts, exchange of currency, extension of credit, purchase or sale of a payment instrument, use of a safe deposit box, or any other acquisition or disposition of property."

Duncan further questions the requirement, presumably of R.C. 1315.55(A)(2), regarding the concealment or disguising of the source of the proceeds being laundered.

Before examining the particular terminology that Duncan challenges, we note, as the trial court did, that the federal statute upon which the Ohio statute is modeled has withstood similar vagueness challenges. See, *e.g., United States v. Haun* (C.A.6, 1993), 90 F.3d 1096, 1101

The statutory language objected to by Duncan is not vague. As noted, the standard is whether the statute fails to give a person of ordinary intelligence fair notice that his or her contemplated conduct is forbidden by statute. Here, Duncan was a member of a group engaged in drug trafficking. They brought drugs into the country through New York City, hidden in honey jars. In September 1996, the group recorded $50,000 in drug sales. They stopped in Cincinnati to conduct wire transmissions of drug money to Miami, Florida. Duncan personally conducted several of the Western Union transmissions, under fictitious names, because she concluded the transmissions might be illegal. It is beyond serious dispute that fair notice of the illegality of the contemplated conduct was given to Duncan in particular.

Duncan further asserts that, in declaring unconstitutional the "liberal construction" provision of R.C. 1315.52, the trial court did not determine whether that portion of the statute was severable pursuant to R.C. 1.50. A review of the trial court's entry and decision reveals that the court did, in fact, consider this issue and correctly ruled that "R.C. 1315.52 is severed from the balance of the legislation without impact on any other statute. R.C. 1.50." The fifth assignment of error is overruled.

In her eighth assignment of error, Duncan initially states that the trial court erred by refusing to grant her written request for special jury instructions on the definition of the word "enterprise," which included language that added a "continuity" requirement to the definition. She argues that the requested instructions were correct statements of law, pertinent to the case, and should have been given.

The trial court has the responsibility to give all jury instructions that are relevant and necessary for the jury to weigh the evidence and make findings of fact. See *State v. Comen* (1990), 50 Ohio St.3d 206, 553 N.E.2d 640, paragraph two of the syllabus; *State v. Lessin* (1993), 67 Ohio St.3d 487, 493, 620 N.E.2d 72, 77–78. Special instructions that correctly state the law pertinent to the case must be included, at least in substance, in the general charge. *State v. Mahoney* (1986), 34 Ohio App.3d 114, 119, 517 N.E.2d 957, 963. However, the Ohio Supreme Court has stated, "We emphatically remind trial courts that they should limit definitions, where possible, to those definitions provided by the legislature in order to avoid unnecessary confusion and needless appellate challenges." *State v. Williams* (1988), 38 Ohio St.3d 346, 356, 528 N.E.2d 910, 921, fn. 14. Similarly, this court has stated that "amplification of statutory definitions is inadvisable, is likely to introduce error, and is to be done, if at all, only with extreme care not to prejudice either party to a criminal case." *State v. Mahoney*, 34 Ohio App.3d at 119, 517 N.E.2d at 963.

Here the written jury instruction defining "enterprise" was a nearly verbatim recitation of the definition in R.C. 2923.31(C), as approved in *State v. Schlosser* (1997), 79 Ohio St.3d 329, 681 N.E.2d 911. The trial court did not err in refusing to give the continuity instruction.

Duncan next claims that "the trial court improperly gave instructions regarding 'conspiracy' and erroneous jury instructions on the Money Laundering statute." We assume that Duncan questions the "complicity" instruction given by the court. As the evidence adduced at trial could reasonably have been found to prove that Duncan aided and abetted the commission of money laundering, the court did not err. R.C. 2923.03(F); *State v. Perryman* (1976), 49 Ohio St.2d 14, 3 O.O.3d 8, 358 N.E.2d 1040, paragraph five of the syllabus.

Finally, the trial court gave the statutorily correct definition of a "pattern of corrupt activity" comprising two or more incidents of corrupt activity. R.C. 2923.31(E); *State v. Williams*. The eighth assignment of error is overruled.

Duncan finally claims that the trial court erred by denying her motion for a new trial based upon the prejudicial and inflammatory remarks of a substitute, off-duty bailiff made to some of the jurors prior to their deliberations.

See *Remmer v. United States* (1954), 347 U.S. 227, 229–230, 74 S.Ct. 450, 451, 98 L.Ed. 654, 655–660.

While waiting for the commencement of closing arguments, several jurors, including Michael Doddy, were approached by the substitute bailiff. The bailiff, who served the jurors during the first days of the trial, stated, according to Doddy, that he could not believe the trial was still going on. The bailiff expressed his belief that Duncan was "stupid for not pleading out." Five days later, following the return of the verdicts, Doddy discussed this matter with his neighbor, an assistant prosecutor for the city of Cincinnati. The matter was brought to the attention of the court in Duncan's motion for a new trial.

The trial court conducted a thorough voir dire of Doddy and the two other jurors who overheard some of the intemperate remarks made by the bailiff. Counsel for Duncan and the state were permitted to question the jurors. Neither of the other two jurors heard the remarks about the trial length or the wisdom of Duncan going to trial. Doddy testified that the comments had no bearing on his deliberations. The trial court concluded that Duncan's rights to a fair trial were not prejudiced, in light of the court's instructions to the jury regarding what matters it could consider in its deliberations, and in light of Doddy's unrebutted statements.

As the trial court is granted broad discretion in assessing the impact of outside influences on jurors, *State v. Phillips* (1995), 74 Ohio St.3d 72, 88–89, 656 N.E.2d 643, 660–661, and as the court conducted a careful examination of the matter, the ninth assignment of error is overruled.

As all of Duncan's assignments of error are without merit, the judgment of the trial court is affirmed.

*Judgment affirmed.*

DOAN, P.J., GORMAN and MARIANNA BROWN BETTMAN, JJ., concur.