DECISION AND JUDGMENT ENTRY
Defendant-Appellant Donald Coates appeals the judgment of the Athens County Municipal Court, which denied in part his motion to suppress the results of field-sobriety test results and found him guilty of operating a motor vehicle while under the influence of alcohol, a violation of R.C. 4511.19(A)(1). Appellant argues that the arresting officer did not have the required reasonable, articulable suspicion necessary to conduct the field-sobriety tests, that these tests were not performed in strict compliance with standardized testing procedures, and that his arrest was not supported by probable cause.
For the following reasons, we affirm the judgment of the trial court.
Statement of the Case and Facts
 I. The Accident and Arrest
On August 15, 2000, Sergeant Richard Meadows, of the Ohio State Highway Patrol, was dispatched to investigate a motor vehicle accident in Alexander Township, Athens County, Ohio. Upon arrival at the scene of the accident, Sergeant Meadows noted a pick-up truck that had rolled onto its side. Sergeant Meadows proceeded to interview the driver of the pick-up truck, as well as Defendant-Appellant Donald Coates, whose vehicle was also at the scene, and several other witnesses.
According to Sergeant Meadows, he noticed a moderate to strong odor of alcohol about appellant's person and that appellant had bloodshot eyes. Appellant told Sergeant Meadows that he was the driver of the other vehicle at the scene, but that he was not involved in the accident. Appellant informed the sergeant that he had passed the oncoming pick-up truck when it ran off the road and rolled onto its side.
Sergeant Meadows proceeded to have appellant perform the horizontal gaze nystagmus (HGN) test. The sergeant then asked appellant to wait for him by his patrol car while he continued his accident scene investigation.
While appellant was waiting by Meadows' patrol car, as requested, Trooper Shawn McLaughlin, also of the Ohio State Highway Patrol, arrived at the accident scene, having been called there by Sergeant Meadows. Trooper McLaughlin was apprised of the situation by his fellow officer and proceeded to have appellant perform two other field-sobriety tests: the one-leg-stand test and the walk-and-turn test.
Following the field-sobriety tests, and while still at the accident scene, Trooper McLaughlin administered a portable breath test to appellant. Appellant was then placed under arrest, read his Miranda
warnings, and transported to the Athens County Post of the Ohio State Highway Patrol. Appellant was charged with operating a motor vehicle while under the influence of alcohol (OMVI), in violation of R.C.4511.19(A)(1).
II. The Trial Court Proceedings
Appellant entered a plea of not guilty to the OMVI charge, requested a jury trial, and filed a motion to suppress. The motion to suppress alleged: 1) that the state troopers had no reasonable, articulable suspicion to stop appellant or have appellant perform field-sobriety tests; 2) that the state troopers lacked probable cause to arrest appellant; and, 3) that a proper Miranda waiver was not procured from appellant. The motion stated that the troopers did not administer the field-sobriety tests in strict compliance with the standards set forth by the National Highway and Traffic Safety Administration (NHTSA). Thus, the results of those tests could not form the basis for probable cause to arrest appellant. Accordingly, appellant concluded that all field-sobriety tests, statements made by appellant to the state troopers, and observations of the state troopers regarding appellant's sobriety should be suppressed.
A. The Suppression Hearing
The trial court held a hearing on appellant's motion to suppress. Sergeant Meadows and Trooper McLaughlin testified at this hearing.
1. Sergeant Meadows
Sergeant Meadows testified concerning the accident scene and the locations of the pick-up truck that had rolled during the accident and appellant's vehicle that was parked at the scene. The sergeant further testified that he interviewed the driver of the pick-up truck, as well as appellant and several other witnesses. The driver of the wrecked pick-up truck informed Sergeant Meadows that appellant was on his side of the road and that he had to take evasive action to avoid a collision.
The sergeant testified that he noticed a moderate to strong smell of alcohol about appellant's person when he first approached him and that appellant was adamant about not being involved in the accident. Sergeant Meadows also testified that appellant had bloodshot eyes.
Further, Sergeant Meadows testified about his administration of the HGN test. The trial court interrupted the prosecutor's questioning of the sergeant and asked the sergeant whether he substantially complied with the standardized testing procedures, to which Sergeant Meadows responded in the affirmative. The sergeant testified that he perceived six out of six possible clues during the HGN test, indicating that appellant was intoxicated.
Upon cross-examination, appellant attempted to elicit from Sergeant Meadows the exact procedure he employed in administering the HGN test. However, the trial court once again interrupted and stated that "the sergeant has already testified as to that he did it in substantial compliance * * * and we are going to move on to other stuff." Following some discussion with counsel, the trial court then asked Sergeant Meadows if he strictly complied with the NHTSA standards when he administered the HGN test. The sergeant responded affirmatively.
The trial court then proceeded to allow appellant to question Sergeant Meadows concerning the precise manner in which he administered the HGN test.
2. Trooper McLaughlin
Trooper McLaughlin testified that there was a strong odor of alcohol about appellant's person. During the trooper's testimony at the suppression hearing, a video recording of his interaction with appellant was displayed. The recording came from the dashboard camera of Trooper McLaughlin's patrol car.
The video depicts Trooper McLaughlin's administration of the one-leg-stand test, the walk-and-turn test, and a portable breath test. During his performance of the one-leg-stand and walk-and-turn tests, appellant lost his balance several times. Appellant objected to admitting this videotape of the field-sobriety tests into evidence, stating that the field sobriety tests should not be used as a basis for finding probable cause to arrest him, since they were not administered in strict compliance with NHTSA standardized testing procedures.
The trial court responded that it was going to rule that the tests could not be referred to as tests if the action against appellant went to trial. The trial court further stated that the observations of the officer during the tests could be presented and admitted as they pertained to whether or not appellant was intoxicated or under the influence.
Trooper McLaughlin did not testify as to whether he thought appellant passed or failed the field-sobriety tests. He did testify that when the driver of the wrecked pick-up truck was approaching appellant's vehicle, the driver of that truck didn't know "whether [appellant was] on the wrong side of the road or [was] going to turn into his driveway."
Other witnesses to the accident who were subpoenaed to appear at the suppression hearing were apparently present, but were not permitted to testify because the trial court deemed their testimony unnecessary.
At the close of evidence, the trial court determined that the officers had probable cause to arrest appellant. An entry was filed indicating that all statements after appellant's arrest were suppressed, that there was a reasonable, articulable suspicion for detaining appellant, and that there was probable cause to support appellant's arrest.
B. Pre-trial Conferences and Change of Plea
Subsequently, in February 2001, two pre-trial hearings were held. At these hearings, the trial court expressed its opinion that the field-sobriety tests were not performed in strict compliance with NHTSA standards. The trial court went even further and expressed its view that the tests were probably not even administered in substantial compliance with NHTSA standards.
Following these hearings, the trial court filed an entry stating its ruling. The trial court held that Trooper McLaughlin could "testify only as to what was observed" and his opinion of appellant's impairment. The trial court's entry further stated that there were to be "no references to `tests' or `grades'" and that appellant was permitted to cross-examine the trooper regarding compliance with NHTSA standards. Finally, the trial court held that the HGN test was not admissible and that the video recording of appellant taking the field-sobriety tests and his arrest was admissible, but without the audio portion.
Following the trial court's ruling, appellant changed his plea to no contest to the charge of OMVI, a violation of R.C. 4511.19(A)(1). The trial court found appellant guilty, fined appellant $550, and sentenced him to one hundred eighty days in jail. The trial court suspended $300 of the fine and the entire jail term contingent upon appellant maintaining and fulfilling certain conditions. The execution of sentence was stayed pending the outcome of this appeal.
 Appellant's Assignments of Error
Appellant timely filed a notice of appeal and presents the following assignments of error for our review.
First Assignment of Error:
 THE TRIAL COURT COMMITTED REVERSIBLE ERROR IN CONTRAVENTION TO THE FOURTH AND FOURTEENTH AMENDMENTS TO THE U.S. CONSTITUTION AND SECTION FOURTEEN OF ARTICLE ONE OF THE OHIO CONSTITUTION BY OVERRULING THE MOTION TO SUPRESS EVIDENCE, AS THE STATE FAILED TO PROVED [sic] THERE WAS A REASONABLE AND ARTICULABLE BASIS FOR AN INVESTIGATORY SEIZURE AND TO CONDUCT FIELD SOBRIETY [sic] TESTS. THE EXCLUSIONARY RULE PROHIBITS THE INTRODUCTION OF THIS EVIDENCE WHICH WAS OBTAINED IN VIOLATION OF THESE CONSTITUTIONAL SAFEGUARDS.
Second Assignment of Error:
 THE TRIAL COURT COMMITTED REVERSIBLE ERROR WHEN IT OVERRULED APPELLANT'S TIMELY OBJECTIONS AS TO A LACK OF A PROPER FOUNDATION TO ALLOW THE OFFICER TO TESTIFY AS TO THE RESULTS OF THE HORIZONTAL GAZE NYSTAGMUS TEST.
Third Assignment of Error:
 THE TRIAL COURT COMMITTED REVERSIBLE ERROR IN OVERRULING APPELLANT'S OBJECTIONS TO TESTIMONY PERTAINING TO THE RESULTS OF THE H.G.N. FIELD SOBRIETY [sic] TEST, AS THE ARRESTING OFFICER FAILED TO ADMINISTER THE TEST IN STRICT COMPLIANCE WITH STANDARDS ADOPTED BY THE NATIONAL HIGHWAY TRAFFIC SAFETY ADMINISTRATION.
Fourth Assignment of Error:
 THE TRIAL COURT ERRED IN ADMITTING EVIDENCE OF THE RESULTS OF THE WALK-AND-TURN TEST, AND ONE LEG STAND AS THEY WERE NOT ADMINISTERED IN STRICT COMPLIANCE WITH N.H.S.T.A. [sic] STANDARDS.
Fifth Assignment of Error:
 THE TRIAL JUDGE ERRED IN ADMITTING THE RESULTS OF THE PORTABLE BREATH TEST INTO EVIDENCE AS THE OHIO DEPARTMENT OF HEALTH DOES NOT RECOGNIZE IT AS AN EVIDENTIAL TESTING DEVICE.
Sixth Assignment of Error:
 THE TRIAL COURT ERRED IN FINDING THERE WAS PROBABLE CAUSE TO ARREST.
 I. Standard of Review
Appellate review of a trial court's ruling on a motion to suppress consists of a two-prong analysis. See State v. Evans (July 13, 2001), Hamilton App. No. C-000565, unreported; State v. Moats (Mar. 6, 2001), Ross App. No. 99CA2524, unreported. First, the trial court's factual findings are given deference and only reviewed for clear error. SeeOrnelas v. United States (1996), 517 U.S. 690, 116 S.Ct. 1657; State v.Duncan (1998), 130 Ohio App.3d 77, 719 N.E.2d 608.
Second, "we engage in a de novo review, without deference to the trial court's conclusions, as to whether these properly supported facts meet the applicable legal standards." Evans, supra; accord Ornelas v.United States, 517 U.S. at 690, 116 S.Ct. at 1657; State v. Duncan,130 Ohio App.3d at 77, 719 N.E.2d at 608.
Appellant's six assigned errors fall into two general categories: (1) whether there was a reasonable, articulable suspicion to support the trooper's initial stop, detention, and questioning of appellant; and (2) whether appellant's arrest was supported by probable cause. Accordingly, we address appellant's assignments of error within this framework.
II. Reasonable, Articulable Suspicion
In his First Assignment of Error, appellant argues that his initial questioning by Sergeant Meadows was not supported by a reasonable, articulable suspicion. Without a reasonable, articulable suspicion to support the officer's actions, appellant contends that all field-sobriety tests must be suppressed.
The United States Supreme Court, in Terry v. Ohio (1968), 392 U.S. 1,88 S.Ct. 1868, set forth the standard for investigative stops and detentions. The Terry Court held that a police officer with "reasonable suspicion" of criminal activity, based upon "specific and articulable facts," may detain an individual, or stop a vehicle and detain its occupants briefly for purposes of limited questioning. Id. at 21,88 S.Ct. at 1879; see State v. Williams (1994), 94 Ohio App.3d 538,641 N.E.2d 239. Any evidence obtained by way of an investigative stop that is not supported by a reasonable, articulable suspicion must be suppressed as "fruit of the poisonous tree." See State v. Lozada (2001),92 Ohio St.3d 74, 748 N.E.2d 520.
Before an officer may order an individual to perform field-sobriety tests, he or she must have a reasonable, articulable suspicion that the individual was operating a motor vehicle while under the influence of alcohol. See Columbus v. Anderson (1991), 74 Ohio App.3d 768,600 N.E.2d 712, citing State v. Bobo (1988), 37 Ohio App.3d 177, 524 N.E.2d 489.
When reviewing whether a police officer had a reasonable, articulable suspicion to order an individual to perform field-sobriety tests, the officer's decision "must be viewed in light of the totality of the surrounding circumstances." State v. Bobo, 37 Ohio App.3d 177,524 N.E.2d 489, paragraph one of the syllabus. In State v. Evans (1998),127 Ohio App.3d 56, 711 N.E.2d 761, fn. 2, the Twelfth District Court of Appeals noted several factors a court should consider when reviewing the totality of the circumstances surrounding an officer's decision to administer field-sobriety tests. The Twelfth Appellate District noted the following factors, with no single one being determinative of this issue:
 (1) the time and day of the stop (Friday or Saturday night as opposed to, e.g., Tuesday morning); (2) the location of the stop (whether near establishments selling alcohol); (3) any indicia of erratic driving before the stop that may indicate a lack of coordination (speeding, weaving, unusual braking, etc.); (4) whether there is a cognizable report that the driver may be intoxicated; (5) the condition of the suspect's eyes (bloodshot, glassy, glazed, etc.); (6) impairments of the suspect's ability to speak (slurred speech, overly deliberate speech, etc.); (7) the odor of alcohol coming from the interior of the car, or, more significantly, on the suspect's person or breath; (8) the intensity of that odor, as described by the officer ("very strong," "strong," "moderate," "slight," etc.); (9) the suspect's demeanor (belligerent, uncooperative, etc.); (10) any actions by the suspect after the stop that might indicate a lack of coordination (dropping keys, falling over, fumbling for a wallet, etc.); and (11) the suspect's admission of alcohol consumption, the number of drinks had, and the amount of time in which they were consumed, if given.
Id.
In the case sub judice, Sergeant Meadows arrived at the scene of a motor vehicle accident, where a driver of a pick-up truck had rolled his vehicle. The driver of the pick-up truck told the officer that appellant was driving on the wrong side of the road. While conducting his investigation of the accident, the sergeant approached appellant.
Appellant told Sergeant Meadows that he had witnessed the accident while he was driving his vehicle, which he then parked at the scene. While talking with appellant, Sergeant Meadows noticed a moderate to strong odor of alcohol about appellant's person. The sergeant also noted that appellant's eyes were bloodshot. Sergeant Meadows then administered the HGN test.
Trooper McLaughlin was called to the scene and was informed of the situation, including the reasons for appellant's detention. During his testimony, the trooper testified that it appeared that appellant may have been on the wrong side of the road when the driver of the other vehicle took evasive action and rolled his vehicle. The trooper testified that appellant had a strong odor of alcohol about his person, but was adamant about not being involved in the accident. Trooper McLaughlin proceeded to administer two other field-sobriety tests, which appellant performed.
Based on the totality of the circumstances (i.e., the accident scene and appellant's likely involvement in the automobile accident, strong smell of alcohol about appellant's person, and appellant's bloodshot eyes), we find that the troopers had sufficient information to cause a prudent person to believe that appellant was driving under the influence.
Accordingly we OVERRULE appellant's First Assignment of Error.
III. Probable Cause to Arrest
Appellant's five remaining assignments of error amount to a challenge of the trial court's determination that the arresting officers had probable cause to arrest appellant for OMVI.
 Whether [appellant's] arrest was constitutionally valid depends in turn upon whether, at the moment the arrest was made, the officers had probable cause to make it — whether at that moment the facts and circumstances within their knowledge and of which they had reasonably trustworthy information were sufficient to warrant a prudent man in believing that the petitioner had committed or was committing an offense.
Beck v. Ohio (1964), 379 U.S. 89, 91, 85 S.Ct. 223, 225. Thus, we must determine whether the arresting officers had information and facts sufficient to cause a prudent person to believe appellant was driving while under the influence of alcohol.
Furthermore, if an arrest is based upon R.C. 4511.19(A)(1), an officer must observe indicia of both alcohol consumption and impaired driving or coordination before there will be probable cause for an arrest. SeeOusley, supra; State v. Hughart (Feb. 23, 1990), Gallia App. No. 88CA21, unreported; State v. Finch (1985), 24 Ohio App.3d 38, 492 N.E.2d 1254.
A. Field-Sobriety Tests as a Basis for Probable Cause
One of the bases for appellant's challenge, that his arrest was made without probable cause, is that the field-sobriety tests were not administered in strict compliance with NHTSA standards. Relying on Statev. Homan (2000), 89 Ohio St.3d 421, 732 N.E.2d 952, appellant argues that the results of the field-sobriety tests cannot form the basis for probable cause and should be suppressed.
In Homan, the Supreme Court of Ohio held that failing to strictly comply with NHTSA testing procedures when administering field-sobriety tests rendered the results of those tests unreliable and thus, the results should not be used to constitute probable cause. See State v.Homan, 89 Ohio St.3d 421, 732 N.E.2d 952, paragraph one of the syllabus.
In the case sub judice, the transcript of the proceedings below reveal that the trial court repeatedly noted that it did not believe the field-sobriety tests were administered in strict compliance with NHTSA standards. In fact, the trial court noted at least once that the tests probably were not even administered in substantial compliance with these standards. Unfortunately, the trial court fails to state in its journal entry what facts it relied upon to conclude and find that probable cause existed for appellant's arrest in this case.
Since the trial court's determination that the field-sobriety tests were not administered in strict compliance with NHTSA standards supports appellant's position, we do not need to individually address the manner in which each test was administered. Additionally, in its brief before this court, the state argues that the trial court did not consider the field-sobriety tests when it found the existence of probable cause. Suffice it to say that, since the tests were not administered in strict compliance with NHTSA testing procedures, the results of those tests cannot provide the basis for a finding that probable cause to arrest appellant existed. See Homan, supra.
B. The Portable Breath Test as a Basis for Probable Cause
Appellant also argues that the trial court erroneously considered the results of the portable breath test (PBT) as a basis for finding probable cause. Once again, the trial court's failure to provide a more specific journal entry, delineating the facts upon which it relied to determine the existence of probable cause, impedes our ability to properly review its findings.
However, the administration of the PBT was entered into evidence via the videotape from Trooper McLaughlin's patrol car and there is no indication of what the results of the PBT were. Thus, no PBT results were admitted into evidence. Also, the state again argues that the trial court did not rely on the PBT when determining the existence of probable cause to arrest appellant.
Additionally, we note that this Court has previously allowed the results of a PBT as a valid factor upon which to base probable cause. SeeState v. Gibson (Mar. 17, 2000), Ross App. No. 99CA2516, unreported;State v. Ousley (Sept. 20, 1999), Ross App. No. 99CA2476, unreported;State v. Moore (June 29, 1999), Lawrence App. No. 98CA44, unreported. Thus, had the trial court relied on the PBT results as a factor for determining probable cause, this would not be in error.
C. The Remaining Bases for Determining Probable Cause
Without considering the results of the field-sobriety tests and PBT, the trial court was left to consider the testimony of the troopers in its determination of probable cause. The troopers testified to the following: (1) appellant's admission that he was driving; (2) the indication from the accident scene investigation that appellant was involved in the motor vehicle accident because he was "on the wrong side of the road"; (3) appellant's bloodshot eyes; and, (4) a moderate to strong odor of alcohol about appellant's person.
Thus, although appellant is correct that the trial court should not have considered the results of the field-sobriety tests as a basis for finding probable cause, based on the totality of the circumstances, we find that appellant's arrest was supported by sufficient information to cause a prudent person to believe appellant was operating his motor vehicle while under the influence of alcohol.
Accordingly, we OVERRULE appellant's remaining assignments of error and AFFIRM the judgment of the trial court.
JUDGMENT AFFIRMED.
 JUDGMENT ENTRY
It is ordered that the JUDGMENT BE AFFIRMED and that appellee recover of appellant costs herein taxed.
The Court finds that there were reasonable grounds for this appeal.
It is further ordered that a special mandate issue out of this Court directing the ATHENS COUNTY MUNICIPAL COURT to carry this judgment into execution.
IF A STAY OF EXECUTION OF SENTENCE AND RELEASE UPON BAIL HAS BEENPREVIOUSLY GRANTED BY THE TRIAL COURT OR THIS COURT, IT IS TEMPORARILYCONTINUED FOR A PERIOD NOT TO EXCEED SIXTY (60) DAYS UPON THE BAILPREVIOUSLY POSTED. The purpose of the continued stay is to allow appellant to file with the Supreme Court of Ohio an application for stay during the pendency of proceedings in that court.
If a stay is continued by this entry, it will terminate at the earlier of the expiration of the sixty day period, or the failure of appellant to file a notice of appeal with the Supreme Court of Ohio within the forty-five (45) day appeal period pursuant to Rule II, Sec. 2 of the Rules of Practice of the Supreme Court of Ohio. Additionally, if the Supreme Court of Ohio dismisses the appeal prior to the expiration of the sixty days, the stay will terminate as of the date of such dismissal.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure. Exceptions.
Abele, P.J., and Harsha, J.: Concur in Judgment Only.