OPINION
{¶ 1} Defendant-appellant, Jana Ullman, appeals her convictions in Lebanon Municipal Court for three counts of prostitution. We affirm appellant's convictions.
 {¶ 2} In October 2001, the Warren County Drug Task Force commenced a drug investigation at Bristol's Show Club and Revue ("Bristol's"), located in Warren County. Bristol's is an establishment that offers adult entertainment, specifically nude female dancing. The task force had received information that illegal drug activity was taking place at Bristol's. The task force assigned Detective Dan Schweitzer of the Warren County Sheriff's Office, and Special Agent Dwight Aspacher of the Ohio Attorney General's Office, Bureau of Criminal Investigation, to the case.
 {¶ 3} Detective Schweitzer and Special Agent Aspacher began working undercover at Bristol's, posing as patrons. Schweitzer and Aspacher made approximately 25 visits to Bristol's from November 2001 to February 2002. During that time, they witnessed numerous drug sales and offers for drug sales on the premises.
 {¶ 4} In order to maintain their appearance as patrons, Schweitzer and Aspacher also purchased private dances with female dancers. During these dances, one or more of the dancers would perform for Schweitzer and Aspacher in exchange for money. During some of these dances, Schweitzer and Aspacher reported that dancers engaged in sexual activity with each other. Specifically, Schweitzer and Aspacher reported that certain dancers performed and received cunnilingus, digitally penetrated each other, and fondled each other's breasts and buttocks. According to Schweitzer and Aspacher, this sexual activity took place during private "couch dances" in a back room. Schweitzer and Aspacher observed appellant, a dancer at Bristol's, participate in sexual activity with another dancer on three separate occasions during "couch dances."
 {¶ 5} At the conclusion of the investigation, law enforcement officers raided Bristol's. As a result of the investigation and raid, 29 individuals were arrested. Many were charged with drug offenses, and some of the dancers, including appellant, were charged with prostitution. Appellant was charged with three counts of prostitution for conduct occurring on three separate dates. The criminal complaint alleged that appellant engaged in "sexual activity for hire" in violation of R.C.2907.25(A), a third-degree misdemeanor.
 {¶ 6} A jury trial was held in Lebanon Municipal Court in September 2002. Detective Schweitzer and Special Agent Aspacher testified for the state while appellant and several other dancers testified for the defense. The jury convicted appellant of all three counts of prostitution.
 {¶ 7} Appellant now appeals her convictions, raising four assignments of error.
ASSIGNMENT OF ERROR NO. 1:
 {¶ 8} "THE TRIAL COURT ERRED IN ADMITTING IRRELEVANT AND PREJUDICIAL EVIDENCE OF ALLEGED DRUG ACTIVITY."
 {¶ 9} In this assignment of error, appellant argues that the trial court should not have admitted testimony regarding drug activity at Bristol's. Appellant argues that admitting such evidence violated the Ohio Rules of Evidence. Appellant concedes that she only occasionally objected to this testimony at trial, but argues that the trial court committed plain error by admitting the testimony.
 {¶ 10} It is well-established that the admission or exclusion of evidence rests within the sound discretion of the trial court. State v.Robb, 88 Ohio St.3d 59, 68, 2000-Ohio-275. Absent an abuse of discretion, an appellate court will not disturb a ruling by a trial court as to the admissibility of evidence. State v. Martin (1985),19 Ohio St.3d 122, 129.
 {¶ 11} The record reveals that appellant did not object to the majority of the testimony presented by the state relating to the drug investigation at Bristol's. When appellant did object, she did not object with the specificity required to preserve the objection for appeal. See Evid.R. 103(A)(1). Therefore, we review this assignment of error under a plain error standard. State v. Wickline (1990), 50 Ohio St.3d 114, 120.
 {¶ 12} "Notice of plain error * * * is to be taken with the utmost caution, under exceptional circumstances and only to prevent a manifest miscarriage of justice." State v. Long (1978), 53 Ohio St.2d 91, paragraph three of the syllabus.
 {¶ 13} We do not find that a manifest miscarriage of justice took place in this case. We find that the evidence admitted at trial relating to the officers' drug investigation and their interaction with appellant in connection with that investigation was admissible on the basis ofState v. Wilkinson (1980), 64 Ohio St.2d 308.
 {¶ 14} In Wilkinson, the Ohio Supreme Court stated that "the jury is entitled to know the `setting' of a case." Wilkinson,64 Ohio St.2d at 317. The court declared admissible "other acts" evidence that is "inextricably intertwined" with the crime in question and that is "necessary to give the complete picture of what occurred." Id.; see, also, State v. Thompson (1981), 66 Ohio St.2d 496, 498; State v.Sinclair, Greene App. No. 2002-CA-32, 2003-Ohio-3246, at ¶ 35.
 {¶ 15} "`Other acts' testimony is relevant and, thus, admissible, under the `scheme, plan or system' exception * * * where those acts form part of the immediate background of the crime charged, and hence are `inextricably related' to the act alleged in the indictment; that is, where the challenged evidence plays an integral part in explaining the sequence of events and is necessary to give a complete picture of the alleged crime." Thompson, 66 Ohio St.2d at 498, citing Wilkinson,64 Ohio St.2d at 317. A jury "is entitled to know the setting of a case because it cannot be expected to make its decision in a void, without the knowledge of the circumstances of the acts that form the basis of the crimes charged." State v. Duncan (1998), 130 Ohio App.3d 77, 86.
 {¶ 16} In this case, the trial court did not create a manifest miscarriage of justice by admitting the evidence concerning the officers' drug investigation at Bristol's. This evidence was necessary for the jury to know the "setting" of the case, specifically, why the officers were at Bristol's, how they came into contact with appellant, and the details of their interaction with appellant. This testimony by the officers gave the jury a context within which it could understand the activity for which appellant was on trial. While appellant may have suffered some prejudice from the officers' testimony of her involvement in drug activity at Bristol's, the relevance of this testimony to the setting of the case outweighed that prejudice.
 {¶ 17} Accordingly, appellant's first assignment of error is overruled.
Assignment of Error No. 2:
 {¶ 18} "THE TRIAL COURT ERRED IN INSTRUCTING THE JURY ON THE REQUISITE MENTAL STATE REQUIRED FOR PROSTITUTION."
 {¶ 19} In this assignment of error, appellant argues that the trial court erred by failing to instruct the jury as to the mental state required for a prostitution conviction. Appellant argues that "recklessly" is the requisite mental state for a prostitution conviction and the mental state on which the trial court should have instructed the jury.
 {¶ 20} The record does not reflect that appellant objected to the jury instructions issued by the trial court. Therefore, we review this assignment of error under a plain error standard. Crim.R. 52(B); Statev. Hanna, 95 Ohio St.3d 285, 2002-Ohio-2221, at ¶ 84. "Notice of plain error * * * is to be taken with the utmost caution, under exceptional circumstances and only to prevent a manifest miscarriage of justice." State v. Long (1978), 53 Ohio St.2d 91, paragraph three of the syllabus. We only find plain error where the outcome of the trial would have been different had the error not occurred. State v. Jenks (1991),61 Ohio St.3d 259, 282.
 {¶ 21} The prostitution statute under which appellant was convicted does not specify a requisite degree of culpability. The statute simply states that "[n]o person shall engage in sexual activity for hire." R.C. 2907.25(A). R.C. 2901.21(B) states that when a statute is silent as to a degree of culpability, and the statute does not plainly indicate a purpose to impose strict liability, recklessness is sufficient culpability to commit the offense. The prostitution statute does not plainly indicate an intention to impose strict liability. State v.Parrish (1984), 12 Ohio St.3d 123, 124. Therefore, recklessness is sufficient culpability for the commission of the offense.
 {¶ 22} The record shows that the trial court did not give an instruction indicating that recklessness was the requisite degree of culpability for a prostitution conviction. The record does reveal that the trial court instructed the jury on the culpability degree of "knowingly." The trial judge first quoted the statutory language for what constituted prostitution — "engaging in sexual activity for hire." Then, after telling the jury that sexual activity meant sexual conduct or sexual contact, the trial judge stated the following: "Now, a person acts knowingly, regardless of his purpose, when he is aware that his conduct will probably cause a certain result or that he is aware that his conduct will probably be of a certain nature. A person has knowledge of circumstances when he is aware that such circumstances probably exist." The trial judge then proceeded to instruct the jury on the multiple counts alleged in the complaint.
 {¶ 23} The "knowingly" instruction by the trial judge would have been more beneficial to appellant than a "recklessly" instruction, given that "knowingly" is a higher degree of culpability that the state would have been required to prove. However, despite the trial judge's "knowingly" instruction, appellant argues that prejudicial error still occurred because the context of the instruction was unclear. Appellant argues that it was not clear to the jury what, if any, mental state was required for a prostitution conviction.
 {¶ 24} The record does show that the trial judge did not specifically tell the jury that it had to find that appellant "knowingly" engaged in sexual activity for hire in order to convict appellant. The trial judge simply read the "knowingly" definition after he described the offense.
 {¶ 25} Nevertheless, appellant has failed to show prejudice due to this alleged error. Appellant's mental state was never an issue at her trial. Appellant never argued at trial that she did not possess the requisite mental state. Her defense was that the alleged acts never occurred. It is clear from the testimony of Schweitzer and Aspacher, as well as from appellant's own testimony, that if the acts did occur, they were done "knowingly," or at least "recklessly." The officers' testimony, if believed, leads to no other conclusion. Because it is apparent that the jury believed the officers' testimony, we find no manifest miscarriage of justice. We find no indication that the re sult of the trial would have been different had the trial judge given a "recklessly" instruction. See State v. Adams (1980), 62 Ohio St.2d 151,155.
 {¶ 26} Because we find no plain error, appellant's second assignment of error is overruled.
Assignment of Error No. 3:
 {¶ 27} "THERE WAS INSUFFICIENT EVIDENCE TO SUPPORT A FINDING OF GUILT."
 {¶ 28} In this assignment of error, appellant argues that the evidence presented by the state at trial was insufficient to support a conviction for prostitution. Specifically, appellant argues that the state only proved that Schweitzer and Aspacher paid for the performance of an expressive dance, not for the performance of sexual activity. Therefore, appellant argues, she did not engage in "sexual activity for hire" and could not be convicted of prostitution.
 {¶ 29} When reviewing the sufficiency of the evidence to support a conviction, an appellate court's function is to examine the evidence admitted at trial to determine whether the evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. State v. Jenks, 61 Ohio St.3d at paragraph two of the syllabus.
 {¶ 30} R.C. 2907.25(A), under which appellant was convicted, provides as follows: "No person shall engage in sexual activity for hire." "Sexual activity" is defined as "sexual conduct or sexual contact, or both." R.C. 2907.01(C).
 {¶ 31} "Sexual conduct" means vaginal intercourse between a male and female; anal intercourse, fellatio, and cunnilingus between persons regardless of sex; and, without privilege to do so, the insertion, however slight, of any part of the body or any instrument, apparatus or other object into the vaginal or anal cavity of another * * *." R.C.2907.01(A).
 {¶ 32} "Sexual contact" means any touching of an erogenous zone of another, including without limitation the thigh, genital, buttock, pubic region, or, if the person is a female, a breast, for the purpose of sexually arousing or gratifying either person." R.C. 2907.01(B).
 {¶ 33} Detective Schweitzer and Special Agent Aspacher both testified that appellant engaged in sexual conduct and sexual contact on three separate occasions. The sexual activity occurred in a back room at Bristol's while appellant and another dancer performed private "couch dances" for the officers. Schweitzer and Aspacher testified that on December 10, 2001 appellant inserted her finger into the vagina of another dancer, Christine Hemmert. The officers also testified that Hemmert performed cunnilingus on appellant and rubbed her nipple against appellant's vagina.
 {¶ 34} Schweitzer and Aspacher also testified that on January 4, 2002 Jennifer Todd, a dancer at Bristol's, performed cunnilingus on appellant and inserted her finger into appellant's vagina. The officers further testified that appellant performed cunnilingus on Todd and inserted her finger into Todd's vagina.
 {¶ 35} Schweitzer and Aspacher testified that on February 5, 2002 appellant and Terry Thornton, another dancer at Bristol's, performed cunnilingus on each other, and that Thornton inserted her finger into appellant's vagina.
 {¶ 36} Appellant, Todd, and Thornton testified at trial that they did not perform cunnilingus on each other and did not insert their fingers into each other's vaginas. The dancers testified that they simulated these sexual acts and only made it appear that the acts were occurring. Appellant admitted at trial that she fondled the breasts of Todd, Hemmert, and Thornton.
 {¶ 37} The testimony of Schweitzer and Aspacher, if believed, was sufficient evidence from which the jury could determine that "sexual conduct" occurred between appellant and each of the three dancers. The officers testified that appellant engaged in cunnilingus on each of the three occasions in question. Therefore, the jury could have found that appellant engaged in "sexual activity" within the meaning of R.C.2907.25(A). The question that remains, however, is whether the state proved that appellant engaged in sexual activity for hire. Appellant argues that the officers paid money in exchange for an erotic dance, not the sexual activity itself. Therefore, appellant contends, she did not engage in sexual activity for hire.
 {¶ 38} We find sufficient evidence in the record from which the jury could determine that appellant engaged in sexual activity "for hire." Following each of the three "dances" during which appellant engaged in sexual activity, the officers paid appellant and the other dancer. On December 10, the officers testified that they paid appellant and Hemmert $35 each. On January 4, the officers testified that they paid appellant and Todd $40 each. On February 5, the officers testified that they paid appellant and Thornton $40 each. These payments were made following the "dances." The testimony of Todd, Thornton, and appellant confirms the fact that these payments were made.
 {¶ 39} Further, the evidence presented at trial does not indicate that the officers paid merely for an erotic dance. The testimony of the officers indicates that the "erotic dances" performed by appellant and the other dancers for the officers on the three occasions in question consisted principally of sexual activity between the two dancers. Additionally, other testimony at trial indicates that the officers were not paying merely for regular "couch dances." Officer Schweitzer testified that prior to the February 5 performance he observed Thornton consult the manager, Randy Trimbell. According to Schweitzer, Thornton indicated that Trimbell had approved the dance, as long as they did it in the back room. Appellant herself admitted at trial that "two-girl shows" in the back room required consultation with the manager. This testimony provided the jury with additional evidence from which it could infer that the dances were not regular couch dances, but were, in actuality, performances of sexual activity.
 {¶ 40} After reviewing the entire record, we find that the evidence presented by the state at trial was legally sufficient to support the jury's guilty verdict on three counts of prostitution. The evidence presented by the state at trial was legally sufficient to support the jury's conclusion that appellant engaged in "sexual activity for hire." Accordingly, appellant's third assignment of error is overruled.
Assignment of Error No. 4:
 {¶ 41} "MS. ULLMAN WAS DEPRIVED OF THE EFFECTIVE ASSISTANCE OF COUNSEL IN VIOLATION OF THE SIXTH AMENDMENT TO THE UNITED STATES CONSTITUTION AND RELATED OHIO GUARANTEES."
 {¶ 42} In this assignment of error, appellant argues that her counsel was ineffective for the following five reasons: (1) he failed to object to the introduction of evidence related to drug activity at Bristol's that was irrelevant and prejudicial; (2) he failed to object to the introduction of evidence of appellant's involvement in that drug activity; (3) he failed to object to officers' characterization of Bristol's as dangerous, "thereby implying that [appellant] was violent and someone to fear"; (4) he failed to effectively present and argue a Crim.R. 29 motion on the basis that the state presented no evidence that the payments made by Schweitzer and Aspacher were in exchange for sexual activity; and (5) he failed to object to the trial court's failure to instruct the jury on the requisite mental state of "recklessly."
 {¶ 43} To establish a claim of ineffective assistance of counsel, a defendant must show that his or her counsel's actions were outside the wide range of professionally competent assistance, and that prejudice resulted by reason of counsel's actions. Strickland v. Washington
(1984), 466 U.S. 668, 687, 104 S.Ct. 2052. Counsel's performance will not be deemed ineffective unless the defendant shows that "counsel's representation fell below an objective standard of reasonableness," id. at 688, and that there exists a reasonable probability that, were it not for counsel's errors, the result of the proceeding would have been different. Id.; State v. Bradley (1989), 42 Ohio St.3d 136, 143.
 {¶ 44} In her first two arguments under this assignment of error, appellant argues that her counsel was ineffective because he failed to object to the introduction of evidence related to the drug investigation, as well as evidence related to appellant's involvement in drug activity at Bristol's. As we discussed in appellant's first assignment of error, this evidence was admissible under the rule set forth in State v. Wilkinson (1980), 64 Ohio St.2d 308. Therefore, such an objection would not have been successful. Further, given the officers' clear testimony that appellant engaged in sexual conduct and accepted money for that conduct, we cannot say that there is a reasonable probability that the result of the trial would have been different had appellant's trial counsel objected. Therefore, appellant's first two arguments under this assignment of error fail.
 {¶ 45} Appellant next argues that her trial counsel's failure to object to the officers' characterization of the Bristol's investigation as "dangerous" constituted ineffective assistance of counsel. Appellant argues that such testimony implied that she was dangerous and someone to fear. However, appellant herself characterized her work as "dangerous" when she stated that she and the other dancers used stage names. Additionally, we find it difficult to believe that the officers' testimony regarding the dangerousness of the investigation would give the jury the impression that appellant was someone to fear. Regardless, we do not find a reasonable probability that the outcome of the trial would have been different had appellant's trial counsel made the objection.
 {¶ 46} Appellant also argues that her trial counsel was ineffective because he failed to "effectively present and argue a Rule 29 motion" on the basis that the state presented no evidence that the officers' payments were in exchange for sexual activity. The record shows that appellant's trial counsel did make a Crim.R. 29 motion at the conclusion of the state's case. That motion was quickly overruled by the trial court judge. A Crim.R. 29 motion should be granted when the state's evidence is insufficient to sustain a criminal conviction. Crim.R. 29. We have already determined as a matter of law that the evidence presented by the state was sufficient to sustain appellant's prostitution convictions. Accordingly, we cannot say that there is a reasonable probability that the result of appellant's trial would have been different had appellant's trial counsel made a more extensive argument that the evidence was insufficient.
 {¶ 47} Finally, appellant argues that her trial counsel was ineffective because he did not object to the trial court's failure to instruct the jury on the mental state of "recklessly." As we discussed in the second assignment of error, appellant's mental state was not at issue during the trial. Appellant's defense was that the sexual conduct never occurred. If the jury believed the officers' testimony that the sexual conduct did occur, it is clear that they would have believed that appellant knowingly, or at least recklessly, engaged in the sexual con duct. Therefore, we do not find a reasonable probability that the outcome of the trial would have been different had appellant's trial counsel objected to the jury instructions.
 {¶ 48} Accordingly, appellant's fourth assignment of error is overruled.
Judgment affirmed.
VALEN, P.J., and WALSH, J., concur.