DECISION AND JUDGMENT ENTRY
{¶ 1} This is an appeal from the judgment of the Ross County Court of Common Pleas in which Defendant-Appellant Alfonso Rosales was convicted of raping a ten-year-old girl, a first-degree felony, in violation of R.C. 2907.02(A)(1)(b). The trial court imposed a six-year term of imprisonment, and classified appellant as a sexual offender.
 {¶ 2} Appellant argues that the lower court erred in denying his motion to suppress. He also argues that the lower court's classification of him as a sexual predator was against the manifest weight of the evidence.
 {¶ 3} We find appellant's arguments to be without merit and affirm the judgment of the trial court.
 I. The Proceedings Below {¶ 4} On New Year's Eve, December 31, 1998, the ten-year-old niece of Defendant-Appellant Alfonso Rosales was raped.
 {¶ 5} The following day, New Year's Day, January 1, 1999, Detective James E. Lowe of the Chillicothe Police Department commenced an investigation of the crime. That day, in an effort to speak with Rosales regarding the rape, Lowe telephoned Rosales's home. However, because Rosales was unavailable, Lowe spoke with Rosales's wife. Lowe asked that she convey the message to Rosales that he wished to speak with him regarding the crime.
 A. The Meeting With Lowe {¶ 6} Three days later, on January 4, 1999, Rosales arrived at the Chillicothe Law Enforcement Complex (CLEC) and asked to speak with Detective Lowe. While the record is unclear as to who brought Rosales to the CLEC, it is undisputed that he came of his own volition and that he was not brought by a law-enforcement officer.
 {¶ 7} Lowe, who was dressed in plain clothes, met Rosales in the lobby of the CLEC. Lowe introduced himself to Rosales and then asked if he would speak with him; Rosales agreed. We note that this was the first contact Lowe had with Rosales concerning this crime.
 {¶ 8} From the lobby, the two men proceeded to an interview room within the CLEC. Once inside the room, Lowe asked if Rosales preferred that the door to the room be open or closed. Rosales responded that he did not have a preference. Lowe left the door open.
 {¶ 9} Lowe then explained to Rosales that he could leave at any time.
 {¶ 10} Next, Lowe explained to Rosales that he wished to talk to him about the rape. Before doing so, Lowe presented Rosales with a waiver form. This document detailed what are commonly referred to as Miranda
rights or warnings — the right to remain silent and the right to legal counsel.[2]
 {¶ 11} Lowe began by reading, and then filling in, blanks at the top of the waiver document that related to the background of the person being interviewed. Rosales provided this information to Lowe. Through this dialogue, Lowe learned the following: Rosales was born, and had lived most of his life, in Mexico; Spanish was his primary language, but that he spoke and understood English; and Rosales's formal education ended in the sixth grade in the Mexican school system.
 {¶ 12} Lowe then proceeded to read the Miranda warnings from the document. During the course of reading these warnings, Rosales stated that he did not understand some of the language because Lowe was reading too quickly. Accordingly, Lowe stopped reading and stated that he would re-read the document more slowly. Lowe also explained that if, at any time, Rosales did not understand what he was saying, that Rosales should stop him and Lowe would then attempt to explain it in other terms.
 {¶ 13} Lowe then proceeded to re-read the document more slowly. At the conclusion of reading each of the Miranda warnings, Lowe had Rosales indicate that he understood the warning by having him write his initials beside the explanation of the right.
 {¶ 14} Lowe then read Rosales waiver language from the document, which indicated that Rosales had been read the Miranda warnings, that he understood his rights, and, if he chose to do so, that he voluntarily waived these rights.
 {¶ 15} Rosales responded that he wished to waive his rights and that he wanted to speak with Lowe about the rape. Accordingly, Rosales signed and dated the document.
 {¶ 16} Lowe and Rosales then proceeded to converse about his whereabouts at the time the crime was committed. Rosales stated that he was very drunk that night, and it "may or may not be true" that he raped his niece — he claimed that he did not recall because he was so inebriated.
 {¶ 17} Rosales then agreed to provide this statement in writing. However, because he claimed to have difficulty writing in English, Rosales provided his written statement in Spanish. After signing and dating the statement, Rosales left the CLEC.
 B. The Trial Court {¶ 18} In February 1999, the Ross County Grand Jury indicted Rosales on one count of Rape, a first-degree felony in violation of R.C.2907.02. Shortly thereafter, Rosales was arraigned on this charge and he pled not guilty.
 1. Motion to Suppress {¶ 19} Subsequently, Rosales filed with the Ross County Court of Common Pleas a motion to suppress all evidence resulting from his conversation with Lowe — including his written statement. In this motion, Rosales argued that he was effectively in custody at the time he spoke with Lowe and that his waiver of his Miranda rights was ineffective for two reasons: (1) Spanish is his primary language and he has difficulty understanding English; and (2) because he is mentally deficient.
 {¶ 20} The trial court held a hearing on this motion. At the hearing, myriad witnesses testified: Dr. James Hagen, a licensed clinical psychologist testified that Rosales's Intellectual Quotient (IQ) test score was in the lowest fifth percentile of the overall population, which indicated borderline mental retardation; and various acquaintances and relatives who testified, inter alia, that Rosales understood spoken English.
 {¶ 21} In March 2000, the trial court denied Rosales's suppression motion.
 {¶ 22} Shortly thereafter, Rosales changed his plea to no-contest and the trial court found him guilty of the offense. Accordingly, the lower court proceeded to the sentencing phase of the case.
 2. Sentencing and Sexual-Predator Classification {¶ 23} In January 2000, the trial court held a sentencing hearing and sentenced Rosales to six years imprisonment. On that same day, the trial court also held a sexual-offender-classification hearing.
 {¶ 24} At this hearing, the only evidence that was provided to the court — with both parties stipulating that this evidence should be considered — was the following: (1) the pre-sentence investigation report prepared by the Ross County Probation Department; and (2) the psychological evaluation prepared by Dr. Hagen.
 {¶ 25} After considering this evidence in light of the applicable statutory factors, the trial court classified Rosales as a sexual predator.
 II. The Appeal {¶ 26} Appellant timely filed an appeal with this Court, assigning the following errors for our review.
 {¶ 27} First Assignment of Error: "The court erred in overruling defendant-appellant's motion to suppress."
 {¶ 28} Second Assignment of Error: "The court erred in determining that the defendant is a sexual predator under R.C. ch. 2950."
 A. Motion to Suppress {¶ 29} In Rosales's First Assignment of Error, he argues that the trial court erred in denying his motion to suppress. Specifically, he argues that the trial court erred in first finding that Rosales was not in custody and then finding that, had he been in custody, he effectively waived his Miranda rights. We disagree.
 {¶ 30} Appellate review of a trial court's ruling on a motion to suppress evidence is a "two-step inquiry." State v. Evans (July 13, 2001), Hamilton App. No. C-000565, unreported; accord State v. Moats
(Mar. 6, 2001), Ross App. No. No. 99CA2524, unreported; see State v.Guysinger (1993), 86 Ohio App.3d 592, 621 N.E.2d 726.
 {¶ 31} First, the trial court's findings of fact are given deference and reviewed only for clear error. See Ornelas v.United States (1996), 517 U.S. 690, 116 S.Ct. 1657; State v. Duncan (1998),130 Ohio App.3d 77, 719 N.E.2d 608. We must accept a trial court's factual findings if they are supported by competent, credible evidence. See State v. Guysinger (1993), 86 Ohio App.3d 592, 621 N.E.2d 726.
 {¶ 32} Second, "we engage in a de novo review, without deference to the trial court's conclusions, as to whether those properly supported facts meet the applicable legal standards." Evans, supra; accord Ornelasv. United States, 517 U.S. at 690, 116 S.Ct. at 1657; State v. Duncan,130 Ohio App.3d at 77, 719 N.E.2d at 608.
 {¶ 33} The Fifth Amendment to the United States Constitution guarantees that "no person shall be compelled to be a witness against himself." State v. Swanner (May 18, 2001), Scioto App. No. 00CA2732, unreported. To effectuate this and other federal constitutional rights, the United States Supreme Court has held that evidence obtained from a custodial interrogation may not be used against a defendant if he was not adequately apprised of his Miranda rights. See Miranda v. Arizona
(1966), 384 U.S. 436, 86 S.Ct. 1602.
 {¶ 34} An individual is in custody when there is a formal arrest or an equivalent restraint on the individual's freedom of movement. SeeCalifornia v. Beheler (1983), 463 U.S. 1121, 103 S.Ct. 3517. When determining whether an individual was in custody, the relevant inquiry is objective: "whether a reasonable person in the individual's position would have believed that he was not free to leave under the totality of the circumstances." Swanner, supra; accord Berkemer v. McCarty (1984),468 U.S. 420, 104 S.Ct. 3138; State v. Gumm (1995), 73 Ohio St.3d 413,653 N.E.2d 253. Subjectivity plays no role in this analysis: "[t]he subjective intent of the law enforcement officer as well as the subjective belief of the defendant has no bearing on the determination of whether a defendant is in custody." Swanner, supra; accord Berkemer,supra.
 {¶ 35} When evaluating an incriminating statement made by a defendant, the state bears the burden of showing that the statement was made in compliance with the foregoing constitutional principles: the state must show that a defendant's statement was voluntary and not in response to custodial interrogation; and, likewise, the state must show that the defendant voluntarily, knowingly, and intelligently waived hisMiranda rights. See Swanner, supra; accord Colorado v. Connelly (1986),479 U.S. 157, 107 S.Ct. 515; Florida v. Royer (1983), 460 U.S. 491,103 S.Ct. 1319; Tague v. Louisiana (1980), 444 U.S. 469, 100 S.Ct. 652.
 {¶ 36} In the case sub judice, Rosales argues that the state did not meet its burden in either of these regards.
 1. Custodial Interrogation {¶ 37} To prove that the suspect voluntarily interacted with the police officer, "the totality of the circumstances must indicate that a reasonable person in the suspect's position would believe that he or she could in fact leave." Swanner, supra; see State v. Robinette (1997)80 Ohio St.3d 234, 685 N.E.2d 762, paragraph three of the syllabus.
 {¶ 38} In State v. Biros (1997), 78 Ohio St.3d 426, 678 N.E.2d 891, the Supreme Court of Ohio was presented with facts and an argument virtually identical to what we have before us. In Biros, the defendant transported himself to the police station, was informed that he was not under arrest, was questioned by law-enforcement officers in a "crowded * * * small interrogation room," and the door to the room was left open.
 {¶ 39} The Biros Court determined that the defendant was not in custody. The court explained that, "[t]here is absolutely no evidence to indicate that [the] appellant was under arrest or that police imposed any restraint on his freedom of movement." Id. at 438, 678 N.E.2d at 903.
 {¶ 40} Here, Rosales's argument suffers from the same deficiency as did the defendant's argument in Biros: there is absolutely no evidence indicating that Rosales was restrained, and it is conceded that he was never told he was under arrest. He voluntarily came to the CLEC, the door to the room in which he was questioned was left open, and he was told that he was free to leave at any time. In fact, the circumstances in this case indicate less restraint than was indicated in Biros.
 {¶ 41} Accordingly, we find that the totality of the circumstances indicate that a reasonable person in Rosales's position would in fact believe that he was not in custody and that he could freely leave. Consequently, we conclude that Rosales's statements to Lowe were voluntarily made and not the result of custodial interrogation.
 {¶ 42} As we have found that Rosales was not in custody at the time he made his statements to Lowe, Miranda warnings were not required in order for his statements to be admissible. Cf. Miranda v. Arizona,384 U.S. at 436, 86 S.Ct. at 1602. Thus, it is immaterial whether the warnings were administered correctly or whether the waiver of such warnings was proper. Consequently, the remaining arguments pertaining to this assignment of error are moot. See James A. Keller, Inc. v. Flaherty
(1991), 74 Ohio App.3d 788, 600 N.E.2d 736, citing South Pacific TerminalCo. v. Interstate Commerce Comm. (1910), 219 U.S. 498, 514,31 S.Ct. 279, 283 ("It is not the duty of a court to decide purely academic or abstract questions.").
 {¶ 43} Nevertheless, in an effort to address Rosales's First Assignment of Error thoroughly, we will proceed to briefly address whether the Miranda warnings were effectively waived.
 2. Waiver {¶ 44} The United States Supreme Court made it clear that, following the administration of Miranda warnings, statements that are the product of interrogation must be suppressed unless the accused explicitly waives his Miranda rights and consents to the interrogation. SeeMiranda, supra; accord Katz, Ohio Arrest, Search and Seizure (2001) 429-430, Section 22.2. In addressing this issue, we are assuming, solely for the sake of argument, that Rosales was in custody when he made his written and oral statements.
 {¶ 45} It is well settled that the prosecution must demonstrate, by a preponderance of the evidence, that a knowing, intelligent, and voluntary waiver of Miranda rights based on the totality of the circumstances surrounding the interrogation. See State v. Edwards
(1976), 49 Ohio St.2d 31, 358 N.E.2d 1051; State v. Paladin (1988),48 Ohio App.3d 16, 548 N.E.2d 263.
 {¶ 46} In the instant matter, Rosales argues that he did not understand his Miranda warnings. Specifically, he maintains that his waiver was ineffective because: (1) Spanish is his primary language and he has difficulty understanding English; and (2) he is mentally deficient.
 a. Understanding of English {¶ 47} The facts before the trial court indicate that the interviewing officer and Rosales were able to understand each other; Rosales's answers were responsive to Lowe's questions. This indicated that Rosales comprehended what Lowe was saying.
 {¶ 48} Further, Rosales indicated to Lowe that he understood English. Likewise, numerous witnesses testified to this fact at the hearing.
 {¶ 49} Indeed, at one point, Rosales became confused because Lowe was speaking too quickly. However, Rosales communicated to Lowe that he thought Lowe was speaking too quickly. Thereupon, Lowe stopped reading, explained that he would re-read the warnings more slowly, advised Rosales to again stop him if spoke too fast, or if Rosales did not understand what he was saying, offered to clarify points of confusion. Lowe then proceeded to re-read the warnings more slowly.
 {¶ 50} Further, Lowe had Rosales write his initials beside each right to indicate that he understood that right as read to him by Lowe.
 {¶ 51} Considering the totality of the circumstances surrounding the interview, and keeping in mind the overriding principle that "the trial court * * * is in the best position to resolve questions of fact and to evaluate witness credibility," we find this argument to be without merit. See, e.g., State v. Mendoza (June 29, 2001), Marion App. No. 9-01-02, unreported (In dismissing the appellant's argument that he did not understand his rights because he spoke primarily Spanish, the appellate court relied on the following facts: the interviewing officer and the appellant were able to understand each other; the appellant's answers were responsive to the questions asked; the appellant indicated that he understood English; and the officer willingly clarified terms for the appellant if the appellant voiced confusion); accord State v. Sura
(Aug. 19, 1996), Stark App. No. 95-CA-0410, unreported; see, generally,State v. Norman (1999), 136 Ohio App.3d 46, 735 N.E.2d 953.
 b. Mental Deficiency {¶ 52} In State v. Jenkins (1984), 15 Ohio St.3d 164,473 N.E.2d 264, the Supreme Court of Ohio, confronted with a factual scenario similar to the case at bar, evaluated whether a mentally retarded accused's waiver of his Miranda rights was voluntary. In so doing, the court noted that, although the police officers were not medical experts, they were able to observe and converse with the accused. Accordingly, the court held that, "[w]hile the explanation of rights and their waiver must be weighed with the individual's * * * mental capacity, the totality of the evidence (including the police observations) supports the trial court's judgment to admit the statement in this case." Id. at 233, 473 N.E.2d at 322.
 {¶ 53} We agree that lack of mental acuity can interfere with an accused's ability to give a knowing and intelligent waiver of hisMiranda rights. See Miller v. Dugger (C.A. 11, 1988), 838 F.2d 153; seeState v. Hill (Nov. 27, 1989), Trumbull App. Nos. 3720 and 3745, unreported. Indeed, an accused who cannot comprehend his rights cannot waive them intelligently. See Miller, supra.
 {¶ 54} However, we emphasize that "[t]his is not a field for inflexible rules"; there is no bright line distinguishing those capable of an intelligent waiver from those who are not. See Miller v. Dugger,838 F.2d at 1539, citing North Carolina v. Butler (1979), 441 U.S. 369,99 S.Ct. 1755; see Hill, supra.
 {¶ 55} "[A]n accused's mental condition, by itself, will [not] universally prevent the accused from ever effectively waiving a constitutional right. * * *. If, under the facts and circumstances present in [the] case, the court can determine that the defendant made a `knowing and intelligent waiver,' the waiver will stand." Hill, supra, citing Colorado v. Connelly (1986), 479 U.S. 157, 107 S.Ct. 515.
 {¶ 56} In State v. Mitzel (Sept. 22, 1989), Trumbull App. No. 3917, unreported, the Eleventh District Court of Appeals was confronted with an argument identical to the one before us. There, the appellate court explained that, "subnormal mentality" may be considered in determining whether the confession was knowingly and intelligently made. However, diminished intelligence will not, in and of itself, negate the waiver and preclude admission.
 {¶ 57} The Mitzel Court went on to explain that all of the facts and circumstances revealed that the defendant was sufficiently aware of the "time, space, geography and environment of his confession"; as well as the fact that he was aware that the persons to whom he was confessing were policemen.
 {¶ 58} Thus, despite the defendant's diminished mental capacity, the Mitzel Court held that the defendant was capable of making a knowing and intelligent waiver of his rights because the totality of the circumstances indicated that he had sufficient understanding to execute a valid waiver. See, also, State v. Nichols (1965), 3 Ohio App.2d 182,209 N.E.2d 750.
 {¶ 59} In the present case, Rosales tested in the lowest fifth percentile on the IQ test administered by Dr. Hagen after Rosales had made his oral and written statements to Lowe. Setting aside the fact that this is the sole evidence supporting his argument that he is mentally deficient; setting aside the possibility that the score on this test might be self-serving; and setting aside the fact that his score indicated only borderline mental retardation, a fact that distinguishes this case from those discussed above; we find that the record is devoid of any evidence indicating that his supposed mental deficiency actuallyaffected his understanding of his Miranda warnings.
 {¶ 60} Moreover, the evidence in this case clearly demonstrates that Rosales exhibited a functional capacity to understand these rights.
 {¶ 61} From the record, it is clear that Rosales, like the appellant in Mitzel, was sufficiently aware of the time, space, geography and environment of his statements, and understood that the person to whom he was speaking was a law-enforcement officer. Rosales voluntarily came to the CLEC, he met Lowe in the lobby of the CLEC, and Lowe introduced himself to Rosales, and to Rosales's wife on the telephone, as a law-enforcement officer.
 {¶ 62} As we indicated earlier, the state bears the burden of proving that a waiver was knowing and intelligent. See Hill, supra. Once the trial court, as the trier of fact, has determined that the state has carried its burden, the decision will not be overruled on appeal unless the appellant demonstrates that the lower court's decision was unsupported by the evidence. See id. We find that Rosales has simply failed to demonstrate this. We see no need to address this argument further.
 {¶ 63} Rosales's First Assignment of Error is OVERRULED.
 B. Sexual-Predator Classification {¶ 64} In Rosales's Second Assignment of Error he argues that the trial court's finding that he is a sexual predator was against the manifest weight of the evidence. We disagree.
 {¶ 65} We have previously stated that a civil "manifest weight of the evidence" standard is to be applied when reviewing a sexual-offender-classification matter. See, e.g., State v. Hinkle (May 19, 2000), Perry App. No. 99CA19, unreported; State v. Hart (Mar. 24, 2000), Hamilton App. No. C-990541, unreported; State v. Daugherty (Nov. 12, 1999), Ross App. No. 99CA9, unreported; State v. Mollohan (Aug. 19, 1999), Ross App. No. 98CA13, unreported; see, generally, State v. Cook
(1992), 65 Ohio St.3d 516, 605 N.E.2d 70.
 {¶ 66} Accordingly, "a judgment will not be reversed as being against the manifest weight of the evidence so long as it is supported by some competent and credible evidence." See Gerijo, Inc. v. Fairfield
(1994), 70 Ohio St.3d 223, 638 N.E.2d 533; Vogel v. Wells (1991),57 Ohio St.3d 91, 566 N.E.2d 154; C.E. Morris Co. v. Foley ConstructionCo. (1978), 54 Ohio St.2d 279, 376 N.E.2d 578, syllabus.
 {¶ 67} We emphasize that this standard is highly deferential: all that is required to sustain the judgment is some competent and credible evidence. See Barkley v. Barkley (1997), 119 Ohio App.3d 155,694 N.E.2d 989.
 {¶ 68} With the foregoing in mind, we turn to the trial court's adjudication classifying appellant as a sexual predator.
 {¶ 69} Our analysis begins with R.C. 2950.01(E), which defines a "sexual predator," inter alia, as one "who has been convicted of * * * a sexually oriented offense and is likely to engage in the future in one or more sexually oriented offenses." R.C. 2950.01(E). To determine whether the classification is warranted, a trial court may hold a hearing. See R.C. 2950.09(C).
 {¶ 70} In a sexual-predator-classification hearing, the offender and the prosecutor are afforded the opportunity to present evidence relevant to whether the offender should be classified as a sexual predator. See R.C. 2950.09(B)(1); State v. Morris (July 18, 2000), Washington App. No. 99CA47, unreported.
 {¶ 71} In making this determination, the trial court is required to consider the factors set out in R.C. 2950.09(B)(2): "(a) The offender's age; (b) The offender's prior criminal record * * *; (c) The age of the victim * * * (d) Whether the sexually oriented offense * * * involved multiple victims; (e) Whether the offender used drugs or alcohol to impair the victim * * *; (f) If the offender previously has been convicted of or pleaded guilty to any criminal offense * * *; (g) Any mental illness or mental disability of the offender; (h) The nature of the offender's sexual conduct * * * with the victim of the sexually oriented offense and whether the sexual conduct * * * was part of a demonstrated pattern of abuse; (i) Whether the offender * * * displayed cruelty * * *; (j) Any additional behavioral characteristics that contribute to the offender's conduct." R.C. 2950.09(B)(2).
 {¶ 72} In the instant case, the trial court stated in its judgment entry that the only evidence provided by the parties to the court — and, again, we note that both parties stipulated that this evidence should be considered — was the following: (1) the pre-sentence investigation report prepared by the Ross County Probation Department; and (2) the psychological evaluation prepared by Dr. Hagen. The lower court then held the following: "having considered the stipulated materials as well as the arguments of counsel and having considered all relevant factors, including the factors set forth in [R.C. 2950.09(B)(2)], [the trial court] finds by clear and convincing evidence [that Rosales] is a sexual predator * * *."
 {¶ 73} Rosales, in his brief to this Court, presents us with the following argument, reproduced here in its entirety:
 {¶ 74} "The evidence relied upon by the Court in making its determination is outlined in the [trial c]ourt's decision (transcript of sexual classification and disposition, P. 8-11) * * *. Most important in this appeal are [sic]: absence of prior sexual-offense conviction, absense [sic] of any significant criminal history, only one alleged victim, and the age of the defendant. This Court is respectfully urged, considering the evidence available to the trial court, to find that there was simply insufficient evidence to that court to make the determination that Rosales is likely to commit another sex offense in the future."
 {¶ 75} We find this argument lacks merit for three reasons. First, we note that Rosales has provided no legal argument, nor included any legal citation, in briefing this assignment of error. On these grounds alone we could dismiss this assignment of error. See Hawley v.Ritley (1988), 35 Ohio St.3d 157, 519 N.E.2d 390; North Coast Cookies,Inc. v. Sweet Temptations, Inc. (1984), 16 Ohio App.3d 342, 476 N.E.2d 388.
 {¶ 76} Second, the transcript of the trial court's sexual-predator-classification hearing was not included in the record.[3]
Therefore, we are unable to consider what the trial court stated at this hearing. See, generally, Russell v. Mercy Hosp. (June 7, 1985), Seneca App. No. 13-83-20, unreported; see, generally, Loc.R. 5(D) of the Fourth District Court of Appeals ("The Appellant is responsible for causing timely transmission of the record * * *.").
 {¶ 77} Moreover, we are cognizant of the long-standing principle that, absent a contrary showing in the record, it is presumed that the lower court considered the necessary statutory criteria in reaching its decision. See, e.g., State v. Ramirez (1994), 98 Ohio App.3d 388,648 N.E.2d 845; accord State v. Wallace (Nov. 21, 2001), Washington App. No. 00CA44, unreported. This precedent, taken in conjunction with the fact that we have only the entry of the trial court to consider, leads us to conclude that Rosales has failed to meet his burden in showing that the trial court erred in this regard.
 {¶ 78} Third, and finally, we emphasize that the state is not required to demonstrate every factor in R.C. 2950.09(B)(2) before an offender can be classified as a sexual predator. See State v. White
(Feb. 9, 2000), Summit App. No. 19387, unreported; see, generally,Barkley v. Barkley, 119 Ohio App.3d at 155, 694 N.E.2d at 989; accordMorris, supra ("A court may so classify an offender even if only one or two factors are present so long as the totality of the relevant circumstances show, by clear and convincing evidence, that the offender is likely to commit a sexually oriented offense in the future.").
 {¶ 79} Here, despite not having the transcript of the hearing before us, the parties appear to be in agreement that the trial court considered the age of the victim, the criminal history of Rosales, Rosales's alcohol abuse, and the cruelty of the offense itself. These considerations meet a number of the factors set forth in R.C. 2950.09(B)(2) and constitute sufficient competent and credible evidence to support the trial court's decision to classify appellant as a sexual predator.
 {¶ 80} Rosales's Second Assignment of Error is OVERRULED.
 III. Conclusion {¶ 81} For the foregoing reasons, we OVERRULE appellant's assignments of error and AFFIRM the well-reasoned judgment of the Ross County Court of Common Pleas.
JUDGMENT AFFIRMED.
 JUDGMENT ENTRY
It is ordered that the JUDGMENT BE AFFIRMED and that appellee recover of appellant costs herein taxed.
This Court finds that there were reasonable grounds for this appeal.
It is further ordered that a special mandate issue out of this Court directing the ROSS COUNTY COURT OF COMMON PLEAS to carry this judgment into execution.
IF A STAY OF EXECUTION OF SENTENCE AND RELEASE UPON BAIL HAS BEENPREVIOUSLY GRANTED BY THE TRIAL COURT OR THIS COURT, IT IS TEMPORARILYCONTINUED FOR A PERIOD NOT TO EXCEED SIXTY DAYS UPON THE BAIL PREVIOUSLYPOSTED. The purpose of the continued stay is to allow appellant to file with the Supreme Court of Ohio an application for stay during the pendency of proceedings in that court.
If a stay is continued by this entry, it will terminate at the earlier of the expiration of the sixty-day period, or the failure of appellant to file a notice of appeal with the Supreme Court of Ohio within the forty-five day appeal period pursuant to Rule II, Sec. 2 of the Rules of Practice of the Supreme Court of Ohio. Additionally, if the Supreme Court of Ohio dismisses the appeal prior to the expiration of the sixty days, the stay will terminate as of the date of such dismissal.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure. Exceptions.
Harsha, J., and Kline, J.: Concur in Judgment Only.
[2] Remarkably, this document was not provided in the record transmitted to this Court. What we provided in our factual presentation was gleaned from the parties' briefs and the trial court's entries. See note 3, infra.
[3] On February 25, 2002, we issued an entry providing appellant ten days to file a motion to supplement the record. However, appellant never responded to this entry.